Filed 9/16/14

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JUDICIAL COUNCIL OF CALIFORNIA et al., <br><br>     Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br>     Respondent; <br><br> MARI BEAN, <br><br>     Real Party in Interest. | B254739 <br><br> (Super. Ct. No. BC486567) |

ORIGINAL PROCEEDING. Petition for Writ of Mandate. Daniel J. Buckley, Judge. Petition granted.

Cummings McClory Davis & Acho and Sarah L. Overton; Sedgwick LLP and Douglas J. Collodel for Petitioners.

No appearance for Respondent.

Gordon, Edelstein, Krepack, Grant, Felton & Goldstein, Roger L. Gordon and Vincent Vallin Bennett for Real Party in Interest.

---

[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part V(F).

## I. INTRODUCTION

Defendants, the Judicial Council of California (the council) and Administrative Office of the Courts, have filed a mandate petition. Defendants seek to compel the respondent court to grant their summary judgment motion. Defendants argue they are entitled to summary judgment because plaintiff, Mari Bean, failed to present a government claim to the Secretariat of the Judicial Council (the secretariat).

In this extraordinary writ proceeding, we must apply 2002 and 2010 enactments specifying the manner of presenting government claims naming defendants. Government Code[1] section 915, subdivisions (c) and (e) specify the manner of presenting a government claim naming defendants. (Stats. 2002, ch. 1001, § 7, pp. 6345-6346; Stats. 2010, ch. 636, § 6.) Section 915, subdivision (c) identifies how a government claim may be served on a judicial branch entity by mail or personal delivery. In this case, the government claim must be mailed or personally delivered to the secretariat. Section 915, subdivision (e)(4) explains that even if the government claim is not mailed or personally delivered, it is sufficient if the secretariat actually receives it. As we will explain, that never happened in our case--there is no triable controversy in that regard.

Plaintiff argues though she complied with the government claims presentation requirement even though she never mailed or personally delivered it to the secretariat. Rather, she mailed her government claim naming defendants to the Victim Compensation and Government Claims Board. Relying on section 915, subdivision (e)(2), she argues mailing her government claim naming defendants to the Victim Compensation and Government Claims Board constitutes proper presentation of her government claim.

---

[1] Unless otherwise noted, future statutory references are to the Government Code.

With respect, we disagree. As there was no proper presentation of plaintiff's government claim, we issue our writ of mandate directing that defendants' summary judgment motion be granted.

## II. THE PLEADINGS

Plaintiff alleges, in a council form complaint: she was severely injured while riding in an elevator in the Clara Shortridge Foltz Criminal Justice Center in Los Angeles; she had complied with applicable claim statutes; and defendants owned, manufactured, "and/or" operated the elevator and failed to properly maintain it. Based on these allegations, plaintiff alleges causes for negligence and a dangerous condition on public property.

## III. DEFENDANTS' UNDISPUTED FACT STATEMENT

Defendants' separate statement asserts there are three undisputed facts: plaintiff did not present a timely government claim to the secretariat for a claim against the council; real party in interest did not present a timely claim to the secretariat for a claim against the Administrative Office of the Courts; and the secretariat never received any government claim from plaintiff. The evidence supporting these three undisputed facts consists of the declaration of Benita Downs, an employee working in the secretariat as the Administrative Coordinator. In addition, defendants relied upon the documents produced by plaintiff in response to a document production demand and her special interrogatory answers.

Ms. Downs's declaration reveals she has been employed by the Administrative Office of the Courts since 1996. She had been assigned to the secretariat unit since February 2012. In her capacity as the Administrative Coordinator, she maintains the

official log of all documents presented or served upon the secretariat. Ms. Downs declared, "I am responsible for receiving and logging all of the government claims, summons and complaints and any other legal process presented to or served upon the [s]ecretariat . . . for claims against either the Judicial Council . . . or the Administrative Office of the Courts." Ms. Downs describes in detail the procedures utilized to document the receipt of any form of legal process including government claims.

Ms. Downs had searched the official log of the secretariat for the years 2011 and 2012. No person with plaintiff's name ever filed a government claim. No person with plaintiff's last name ever filed a government claim with the secretariat. The only legal process involving plaintiff served on the secretariat was the summons and complaint in this case. Ms. Downs concludes her declaration, "Upon review of the official record of the [s]ecretariat . . ., I can affirmatively state that no government claim has been presented to the [s]ecretariat . . . by or on behalf of the plaintiff. . . ."

In addition to Ms. Downs's declaration, defendants rely on plaintiff's response to a document production demand and special interrogatory answers. Defendants submitted a production demand for plaintiff's timely government claim presented to the secretariat. In response, plaintiff produced a government claim form stamped "RECEIVED" on January 4, 2011, directed to the Victim Compensation and Government Claims Board. The government claim names the State of California and defendants. The claim, prepared by plaintiff's lawyer, Vincent Bennett, identifies the location where she was injured as an elevator in the Clara Shortridge Foltz Criminal Justice Center.

In addition, defendants rely on plaintiff's special interrogatory answers. In two special interrogatories, plaintiff was asked to identify all facts which supported her contention that she presented a timely claim to the secretariat. Plaintiff answered both special interrogatories by referring to the government claim received on January 4, 2011, by the California Victim Compensation and Government Claims Board. And plaintiff

4

added in her special interrogatory answers: "See, also the trial court's notice of ruling concerning Defendant's Demurrer. The Court ruled that Plaintiff had complied with the Government Claim filing requirements."

## IV. PLAINTIFF'S UNDISPUTED FACT STATEMENT

Plaintiff relies on a series of documents including the complaint and the government claim submitted on December 29, 2011. In addition, she cites to an Administrative Office of the Court media advisory dated June 1, 2011, which states in part: "The Clara Shortridge Foltz Criminal Justice Center in Los Angeles transitions today from the county to the Administrative Office of the Courts as managing party. . . . [¶] . . . The facility transitions from the county to the state as managing party on Wednesday, June 1, 2011. [¶] . . . The transfer is part of a process set in motion by the Trial Court Facilities Act of 2002, the landmark legislation that envisioned a single, comprehensive infrastructure program for court facilities statewide as a final step in the unification of California's trial courts. The law authorized transfer for all California court facilities from the counties to the state, ensuring equal access to safe, secure, and adequate court[s] to the benefit of all Californians. By sharing knowledge and resources from all 58 California counties, the [Administrative Office of the Courts] applies the state's large-scale purchasing power to create greater efficiencies and cost savings. The Foltz facility becomes the 24th court facility in Los Angeles to transition to the [Administrative Office Courts] as managing party. The transition of the remaining 14 Los Angeles court buildings should be completed next year."

Also, plaintiff relied upon a January 17, 2012 letter addressed to her attorney, Mr. Bennett, from the Victim Compensation and Government Claims Board. The letter indicates it was sent by the Government Claims Program on behalf of the State of California. The letter acknowledges the Victim Compensation and Government Claims

5

Board received plaintiff's claim on December 30, 2011. The letter further states: "To the extent the Victim Compensation and Government Claims Board has jurisdiction over your claim, the claim is being rejected because the issues presented are complex and outside the scope of analysis and interpretation typically undertaken by the [Victim Compensation and Government Claims Board]. The claim has been placed on the consent agenda. The [Victim Compensation and Government Claims Board] will act on your claim at the hearing referenced below (February 16, 2012). You do not need to appear at this hearing. The [Victim Compensation and Government Claims Board's] rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further." Mr. Bennett, plaintiff's attorney, received a second letter dated February 24, 2012, from the Victim Compensation and Government Claims Board, which indicates her claim had been rejected on February 16, 2012. The February 24, 2012 letter contains a warning concerning the six-month statute of limitations for filing suit after rejection of a government claim. Near the bottom of both letters is the notation: "Judicial Council, Attn: Michael Bergeisen."

Additionally, plaintiff relies upon prior rulings in this case concerning the government claims issue. Plaintiff relies upon the February 6, 2013 reporter's transcript of the hearing on the demurrer. At that hearing, the respondent court ruled the government claim was properly served on the Victim Compensation and Government Claims Board.

And, plaintiff relies on the deposition transcript of Daniel Hutton. Mr. Hutton was designated as a person most qualified to testify on the management of the Clara Shortridge Foltz Criminal Justice Center. (Code Civ. Proc., § 2025.230.) Mr. Hutton did not know who was responsible for the management of the Clara Shortridge Foltz Criminal Justice Center. Mr. Hutton testified he did not know if the Judicial Council owned the Clara Shortridge Foltz Criminal Justice Center. But, he admitted the Judicial

6

Council may be the owner.  Later, he changed his testimony and stated he did not know "exactly" who owned the Clara Shortridge Foltz Criminal Justice Center.

## V.  DISCUSSION

### A.  Summary Judgment Standard Of Review

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 (*Aguilar*), our Supreme Court described a party's burdens on summary judgment motions as follows:  "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.  That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon.  [Citation.]  There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . .  [¶]  [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . .  A prima facie showing is one that is sufficient to support the position of the party in question.  [Citation.]"  (*Aguilar, supra*, 25 Cal.4th at pp. 850-851, fns. omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)  We review the respondent court's decision to deny the summary judgment motion de novo.  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.)  The respondent court's stated reasons for denying summary judgment are not binding on us because we review

7

its ruling not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco, supra,* 50 Cal.4th at p. 336; *Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196.) In addition, a summary judgment motion is directed to the issues framed by the pleadings. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673, overruled on a different point in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527.) Those are the only issues a motion for summary judgment must address. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249-1250; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364.)

### B. Government Claims And Section 915

This case involves the question of whether there has been a proper presentation of a government claim. Our Supreme Court synthesized the controlling law concerning government claims as follows: "Suits for money or damages filed against a public entity are regulated by statutes contained in division 3.6 of the Government Code, commonly referred to as the Government Claims Act. We have previously noted that '[s]ection 905 requires the presentation of "all claims for money or damages against local public entities," subject to exceptions not relevant here. Claims for personal injury and property damage must be presented within six months after accrual; all other claims must be presented within a year. (§ 911.2.) "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected. . . ." (§ 945.4.) "Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.' [Citation.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737-738; see *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 989-990 (*DiCampli*).)

8

Our Supreme Court explained the role of section 915 in the context of a local public entity as follows: "Section 915(a)(1) reflects the Legislature's intent to precisely identify those who may receive claims on behalf of a local public entity. Section 915(e)(1) reflects the Legislature's intent that a misdirected claim will satisfy the presentation requirement if the claim is "actually received" by a statutorily designated recipient. Thus, compliance with section 915(e)(1) requires actual receipt of the misdirected claim by one of the designated recipients. If an appropriate public employee or board never receives the claim, an undelivered or misdirected claim fails to comply with the statute. (*Life*[ *v. County of Los Angeles* (1991) 227 Cal.App.3d 894,] 901.) This straightforward construction honors the statutory language and is consistent with the purpose of the claims statutes." (*DiCampli*, *supra*, 55 Cal.4th at pp. 992-993.)

### C. The Ambiguity In The Statutory Language Concerning Government Claims Presentation Requirements For The Judicial Branch

#### 1. General overview of the 2002 and 2010 legislation

As noted, the present case involves the application of two enactments in 2002 and 2010, which substantially modified section 915. Before identifying the ambiguity in section 915, we begin by providing a broader context of how judicial branch entity government claims are processed after 2002. In 2002, the Legislature adopted Assembly Bill No. 2321 (Assem. Bill No. 2321) (2001-2002 Reg. Sess.). Assembly Bill No. 2321 amended various provisions of the Government Code to: define the term "judicial branch entity" (§§ 900.3, 940.3); expressly provide the council "shall act on a claim against the judicial branch entity or judge of one of those entities in accordance with the procedure that the [council] provides by" court rule (§ 912.7); specify how a government claim is to be presented in cases involving a judicial branch entity or its employees (§ 915, subds. (c) & (d)); authorize the council to "adjust and pay any claim arising out of the activities of a judicial branch entity or judge thereof" (§ 935.8, 948.1); permit the council to adopt court

9

rules concerning settlement of claims (§ 935.8); specify a different method of service of petitions for permission to file late claims in cases involving judicial branch entities from those of other government agencies (§§ 911.4, 946.6); provide specified methods for serving a summons against a judicial branch entity (§ 955.9); establish a separate method for payments of claims, settlements or judgments for judicial branch entity litigation which differs from that applicable to other government agencies (§§ 948, 965, subd. (c)); specify the manner in which the Administrative Director of the Courts certifies to the Controller that sufficient funds exist to pay a judgment or settlement (§§ 965.2, subd. (a), 965.6, subd. (c)); and require the Administrative Director of the Courts in specified cases to report to the council how to avoid a recurrence of the circumstances giving rise to liability (§ 965.65, subd. (b)). (Stats. 2002, ch. 1007, §§ 2, 4, 7, 9, 11-14, 16-20, pp. 6343-6352.)

The 2010 amendments principally involve the California State University trustees. (Sen. Bill No. 1046 (2009-2010 Reg. Sess.).) The trustees concluded it was in the university's best interests to no longer be subject to the tort claims process applicable to other government agencies. (Sen. Com. On Judiciary, Analysis of Sen. Bill No. 1046 (2009-2010 Reg. Sess.) Apr. 7, 2010, pp. 1-4; Assem. Com. on Higher Education, Analysis of Sen. Bill No. 1046 (2009-2010 Reg. Sess.) June 22, 2010, pp. 1-3.) Thus, a separate claims and payment procedure was adopted for the California State University trustees. The 2010 claims and payment procedure was adopted for the California State University trustees was similar to that adopted in 2002 for the council.

2. The 2002 and 2010 versions of section 915

As noted, the present case involves language in section 915. For clarity, we will briefly overview how the language changed between 2002 and 2010. In 2002, section 915, subdivision (d) was amended to state: "A claim, amendment or application shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section if it is actually received by the clerk,

10

secretary, auditor or board of the local public entity, is actually received at an office of the Victim Compensation and Government Claims Board, or, if against a judicial branch entity or judge, it is actually received by the court executive officer, court clerk/administrator, court clerk, or secretariat of the judicial branch entity, within the time prescribed for presentation thereof." (Stats. 2002, ch. 1007, § 7, pp. 6345-6346.) The 2002 enactment replaced a similar provision in former section 915, subdivision (c) which provided a government claim was properly presented when it was actually received under enumerated circumstances. (Stats. 1965, ch. 653, § 8, p. 2012 ["A claim . . . shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section if it is actually received by the clerk, secretary, auditor or board of the local public entity, or is actually received at an office of the State Board of Control, within the time prescribed for presentation thereof"].) As noted, in 2002 the California State University trustees had not yet secured a separate claims resolution process for their agency. That occurred in 2010.

In 2010, the language in section 915, subdivision (d) was moved to subdivision (e). This was necessitated because section 915, subdivision (d) was added to allow the California State University trustees to manage claims against their agency. The new language in section 915, subdivision (e), which exists to this date, states: "A claim, amendment or application shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section if, within the time prescribed for presentation thereof, any of the following apply: [¶] (1) It is actually received by the clerk, secretary, auditor or board of the local public entity. [¶] (2) It is actually received at an office of the Victim Compensation and Government Claims Board. (3) If against the California State University, it is actually received by the Trustees of the California State University. [¶] (4) *If against a judicial branch entity or judge, it is actually received by the court executive officer, court clerk/administrator, court clerk, or secretariat of the judicial branch entity*." (Italics added.) The principal effect of the 2010 amendment to section 915 was to reflect that for the first time the California State University trustees were subject to a separate claims presentation

11

requirement.  Plaintiff relies on the language in section 915, subdivision (e)(2) concerning actual receipt by the Victim Compensation and Government Claims Board.

### 3.  Section 915, subdivision (e) is ambiguous and review of legislative intent materials is therefore appropriate

Plaintiff argues that section 915, subdivision (e)(2) is unambiguous.  According to plaintiff, since her claim was actually received by the Victim Compensation and Government Claims Board, it was properly presented. By contrast, defendants argue section 915, subdivision (e)(4) unambiguously states the actual receipt requirement is only satisfied when a government claim is received by the *secretariat*.  In our view, the actual receipt requirements in section 915, subdivision (e) are ambiguous and judicial construction of its provisions is appropriate.

Our Supreme Court has specified the standards of statutory construction applicable here:  "'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]'  (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)  "'When the language of a statute is clear, we need go no further.'  [Citation.]  But where a statute's terms are unclear or ambiguous, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part."'  (*In re M.M.* (2012) 54 Cal.4th 530, 536.)"  (*People v. Harrison* (2013) 57 Cal.4th 1211, 1221-1222.)  We construe all the provisions of a statute as a whole:  "The statutory language is not read in isolation, however.  Rather, we consider its terms 'in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.'  (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)"  (*Los*

*Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 186.) And we must give meaning to every word of a statute so as to avoid a construction making any language surplusage. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118; *Reno v. Baird* (1998) 18 Cal.4th 640, 658.)

We now turn to the language of section 915 in order to determine whether it is ambiguous in terms of where a judicial branch entity claim must be presented. If the relevant provisions of section 915 are unclear, we may resort to extrinsic aids to determine the Legislature's intent. At first glance, section 915 may be viewed as an unambiguous description of how government claims are to be presented to different agencies. But a judicious examination of the statutory text convinces us there is sufficient ambiguity to warrant looking to its legislative history and the related statutory scheme. Section 915 identifies four different types of entities and provides specified means of presenting a government claim to: a local public entity; the state; a judicial branch entity; and the State University trustees. First, section 915, subdivision (a) specifies the manner of presentation of a government claim to a local public entity. Section 900.4 defines a local public entity as follows, "Local public entity" includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State, but does not include the State." A government claim against a local public entity is presented as follows: "A claim . . . shall be presented to a local public entity by either of the following means: [¶] (1) Delivering it to the clerk, secretary or auditor thereof. [¶] (2) Mailing it to the clerk, secretary, auditor, or to the governing body at its principal office." (§ 915, subd. (a).)

Second, section 915, subdivision (b) specifies how to present a government claim to the state. The state is defined in section 900.6 thusly, "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Section 915, subdivision (b) states in part: "*Except as provided in subdivisions (c) and (d)*, a claim . . . shall be presented to the state by either of the following means: [¶] (1) Delivering it to an office of the Victim Compensation and Government Claims Board. [¶] (2) Mailing it

13

to the Victim Compensation and Government Claims Board at its principal office." (Italics added.) Section 915, subdivisions (c) and (d), the italicized exceptions in section 915, subdivision (b), involve presentation of government claims to a judicial branch entity or the California State University trustees.

Third, section 915, subdivision (c) explains how to present a claim to a judicial branch entity. Presentation of a government claim to a judicial branch entity is accomplished differently than upon the state as specified in section 915, subdivision (b). The term judicial branch entity is defined in section 900.3 as, "A 'judicial branch entity' is a public entity and means any superior court, court of appeal[], the Supreme Court, the Judicial Council, or the Administrative Office of the Courts." A government claim is to be presented to a judicial branch entity as follows: "A claim . . . shall be presented to a judicial branch entity in accordance with the following means: [¶] (1) Delivering or mailing it to the court executive officer, if against a superior court or a judge, court executive officer, or trial court employee, as defined in Section 811.9, of that court. [¶] (2) Delivering or mailing it to the clerk/administrator of the court of appeals, if against a court of appeals or a judge of that court. [¶] (3) Delivering or mailing it to the Clerk of the Supreme Court, if against the Supreme Court or a judge of that court. [¶] (4) *Delivering or mailing it to the Secretariat of the Judicial Council, if against the Judicial Council or the Administrative Office of the Courts*." (Italics added.) It is this latter portion of method of presentation in section 915, subdivision (c)(4), the delivering or mailing of a government claim to the secretariat, that defendants contend never happened.

Fourth, section 915, subdivision (d) identifies the manner of presenting a claim to the California State University trustees. Section 915, subdivision (d) states in part, "A claim . . . shall be presented to the Trustees of the California State University by delivering or mailing it to the Office of Risk Management at the Office of the Chancellor of the California State University."

Before proceeding further, it is important to understand how all of the foregoing four subdivisions define the same methods for presentation of a claim to the specified entities. Every enumerated method of presentation involves either the *delivery* or *mailing*

14

of the government claim to a specified official or office. That is, section 915, subdivisions (a) through (d) involve the mailing or delivery of the government claim. We now turn to section 915, subdivision (e) which involves proof of actual receipt of the *government claim by one of the four specified entities.*

Section 915, subdivision (e) describes how actual receipt of a government claim may be sufficient even if there is no evidence of delivery or mailing. As noted, section 915, subdivision (e) states in part: "A claim . . . is deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section if, within the time prescribed for presentation thereof, *any of the following apply*: [¶] (1) It is actually received by the clerk, secretary, auditor or board of the local public entity. [¶] (2) It is actually received at an office of the Victim Compensation and Government Claims Board. [¶] (3) If against the California State University, it is actually received by the Trustees of the California State University. [¶] (4) If against a judicial branch entity or judge, it is actually received by the court executive officer, court clerk/administrator, court clerk, or secretariat of the judicial branch entity." (Italics added.) As to the four entities listed in section 915, subdivisions (a) through (d), actual receipt of a government claim satisfies the presentation requirement. Plaintiff relies on the italicized language to support her contention that actual receipt by the Victim Compensation and Government Claims Board satisfies the claims presentation requirement.

Plaintiff argues that even though the secretariat never received the claim, the Victim Compensation and Government Claims Board did. Plaintiff argues the plain language of section 915, subdivision (e)(2) states actual receipt by the Victim Compensation and Government Claims Board is deemed to satisfy the presentation requirement. Citing the statutory text, plaintiff reasons as follows. She relies on the "within the time prescribed for presentation thereof, any of the following apply" language in the penultimate introduction to section 915, subdivision (e). Plaintiff reasons that actual receipt by *any* of the entities listed in section 915, subdivisions (e)(1) through (e)(4) is sufficient. Plaintiff contends that the word "any" means just that, arguing:

15

"Section 915(a)(1) reflects the [L]egislature's intent to precisely identify those who may receive claims on behalf of a public entity. Section 915(e)(2) reflects the [L]egislature's intent that a purportedly misdirected claim will satisfy the presentation requirement if the claim is 'actually received' by at least one alternative statutorily designated recipient."

No doubt, there is something to be said for plaintiff's well-stated argument. However, there are other ways of looking at section 915, subdivision (e) and this creates the ambiguity which warrants engaging in statutory construction. Section 915, subdivision (e) closely parallels the delivery and mailing provisions in section 915, subdivisions (a) through (d). Section 915, subdivision (c) requires presentation to the secretariat if suit is brought against defendants. There is no logical reason the Legislature intended to create separate delivery and mailing provisions in section 915, subdivision (c) and distinct actual receipt regimens in section 915, subdivision (e).

Moreover, section 915 states there is compliance, "if . . . any of the following apply" which directs the reader to the judicial branch language in section 915, subdivision (e)(4). The language in section 915, subdivision (e)(4) is specific, "If against a judicial branch entity . . . it is actually received by the . . . secretariat of the judicial branch entity." Section 915, subdivision (e)(4) contains the qualifier that if the government claim is against a judicial branch entity, then there is compliance if it is actually received by the secretariat. This is at least an equally plausible way to read section 915, subdivision (e) than that asserted by plaintiff. We conclude section 915, subdivision (e) is at least ambiguous and is appropriate therefore to review legislative intent materials concerning judicial branch government claims.

D. Legislative Intent Materials Demonstrate The Legislature Intended That Judicial Branch Entity Claims Against Defendants Be Presented To The Secretariat, Not The Victim Compensation And Government Claims Board

In 2002, the Legislature enacted new or amended provisions concerning the council's responsibility for resolving government claims against judicial branch entities. (Stats. 2002, ch. 1007, §§ 1-20, pp. 6343-6352.) Enactment of Assembly Bill No. 2321

16

was necessitated because the trial courts were no longer considered a branch of county government. The report prepared for the Assembly Committee on Judiciary explained the necessity of the legislation: "For most of the state's history, California's trial courts have been considered a branch of county government. A series of recent changes in the law have firmly established the trial courts as part of the judicial branch of state government. . . . The Legislature has also given the Judicial Council . . ., through the Administrative Office of the Courts, the responsibility for managing claims and actions against the trial courts. Pursuant to these changes, this bill, sponsored by the Judicial Council, seeks to amend the Torts Claims Act to create new procedures to be followed by parties wishing to file claims for money or damages arising from the activities of a judicial branch entity." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2321 as amended Apr. 22, 2002, p. 1; see Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2321 as amended Apr. 22, 2002, p. 1.) The author, Assembly Speaker Robert Hertzberg, provided the following insights as to the necessity for the legislation: "The [Tort Claims Act] prohibits, with certain exceptions, such a lawsuit unless the person first presents a written claim to the governing board of the public entity in accordance with the [Tort Claims Act]. The author notes that the [Tort Claims Act] distinguishes between local public entities and the State and sets forth different requirements for presenting claims to the former and the latter. Historically, claims against the trial court were presented to the county in which the court was located. Now, however, because of the relatively recent separation of the trial courts from county governments, the application of the [Tort Claims Act] to the trial court's is ambiguous. A person wishing to present a claim for money or damages against a trial court currently cannot determine with certainty where to do so. [¶] . . . Although section 811.9 gives the Judicial Council and the [Office of General Counsel of the Administrative Office of the Courts] responsibility for claims affecting the trial courts, it does not state precisely how those claims are to be presented or considered. Under the [Tort Claims Act], claims generally are presented to a 'board,' and the 'board' acts on those claims. The board for the state is the Victim Compensation and Government Claims Board (formerly called the Board of Control)[].

17

For local public entities, it is the governing board of the entity. Section 811.9 does not identify the trial courts as being either the 'State' or a 'local public entity' under the [Tort Claims Act]. As a result, it is unclear what 'board' should receive and consider claims. This bill clarifies that issue by specifying the Judicial Council shall serve in this capacity for tort claims brought against judicial entities." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2321, *op. cit.*, pp. 3-4; see Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2321, *op. cit.*, p. 2.)

Both the Assembly judiciary and appropriation committee reports state Assembly Bill No. 2321 (2001-2002 Reg. Sess.) has as its purpose, "Establishes the Judicial Council rather than the Victim Compensation and Government Claims Board (formerly known as the Board of Control) as the governing body authorized to act on claims in actions filed against a judicial branch entity or judge thereof." (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2321, *op. cit.*, p. 1; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2321, *op. cit.*, p. 2.) In terms of the presentation of government claims, the judiciary committee report: "Specifies that claims and actions shall be presented by delivering or mailing the claim to, or serving the action on, the court executive officer if the claim is against a superior court or judge thereof; to the clerk/administrator of the Court of Appeal if against a Court of Appeal or judge thereof; to the clerk of the Supreme Court if against the Supreme Court or judge thereof; to the Secretariat of the Judicial Council if against the Judicial Council or [Administrative Office of the Court]." (*Ibid.*)

Further, the judiciary committee report states the Controller is authorized to pay claims, settlements or judgments upon certification by the Administrative Director of the Courts. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2321, *op. cit.*, p. 2.) If there was a dispute over the sufficiency of funds available to pay claims, the legislation provided a mechanism for advising the Legislature. (*Ibid.*) Then, the report states the legislation would direct the council to adopt rules to manage litigation. (*Ibid.*; see Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2321, *op. cit.*, p. 1.)

18

After passage by the Assembly, the Senate Judiciary Committee report reiterated much of the analysis appearing in the two Assembly reports. However, the very first paragraph in the Senate report states, "This bill would provide the proper procedure under the Tort Claims Act for the filing of claims against the judicial branch entity (court, appellate court, the Supreme Court, the Judicial Council, the Administrative Office of the Courts). . . ." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2321 (2001-2002 Reg. Sess.) June 25, 2002, p. 1.) Later, the judiciary committee report, after describing the confusion concerning the proper presentation of government claims against judicial branch entities following court unification, states: "This bill would require presentation of a claim, or any amendments thereto, or an application for leave to file a late claim against the judicial branch entity, judge, court executive officer, or court employee by delivery or mailing to the specific judicial branch entity. Thus, a claim against the superior court or a judge of that court would be delivered or mailed to the court executive officer; a claim against an appellate court or a judge thereof, to the clerk of the Court of Appeal; a claim against the Supreme Court or judge thereof, to the clerk of the Supreme Court; a claim against the Judicial Council or the [Administrative Office of the Court], to the Secretariat of the Judicial Council." (*Id.* at p. 6.) In addition, the Senate report reiterated the council was the entity authorized to act on government claims brought against judicial branch entities. (*Id.* at pp. 2-3.)

After minor amendments in the Senate, the legislation was returned to the Assembly. The analysis prepared for the full Assembly states: the council rather than the Victim Compensation and Government Claims Board is to act on government claims filed against a judicial branch entity; specifies that claims against the council "shall be presented" to the secretariat; and directs the council to manage claims filed against judicial branch entities. (Analysis prepared for concurrence in Senate amendments, of Assem. Bill No. 2321 (2001-2002 Reg. Sess.) June 29, 2002, pp. 1-2.) Finally, the Assembly report reiterated Speaker Hertzberg's views concerning the need to clarify where government claims must be filed against judicial branch entities. (*Id.* at pp. 3-4.)

19

The Legislative Counsel's Digest for Assembly Bill No. 2321 states: "This bill would require, instead, in the case of a claim against a judicial branch entity, as defined, or a judge of one of those entities, that the Judicial Council act on the claim in accordance with the procedure that the Judicial Council would provide by rule of court. The bill would specify certain means of presentation and service of a claim against a judicial branch entity or one of its judges. The bill would authorize the Judicial Council to settle, adjust, or compromise any pending action arising out of the activities of a judicial branch entity or judge thereof, and to authorize the Controller to draw a warrant for payment of any final judgment or settlement based on claims arising out of the activities of a judicial branch entity." (Legis. Counsel's Dig., Assem. Bill No. 2321, (2001-2002 Reg. Sess.) 4 Stats. 2002, Summary Dig., p. 450.)

E. The Legislative Intent Materials Resolution Of The Ambiguity In Section 915

The foregoing legislative intent materials demonstrate the Legislature intended to specify where claims against defendants were to be presented. The Legislature expressly intended claims against defendants be presented to the secretariat. Assembly Bill No. 2321 was a comprehensive legislative effort establishing rules for the presentation and resolution of government claims against judicial branch entities. Thus, the ambiguity in section 915, subdivisions (c) and (e) is resolved by reference to the foregoing unmistakable expressions of legislative intention. Further, no legislative intent materials indicate in any fashion the Legislature intended to have the Victim Compensation and Government Claims Board have anything to do with judicial branch entity government claims. It would be unreasonable for the Legislature to intend a government claim would be presented to the Victim Compensation and Government Claims Board. The Victim Compensation and Government Claims Board has no power to resolve the claim; that authority rests with the council. In conducting statutory construction, it is our duty to avoid such absurd outcomes. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83; *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) After

engaging in the appropriate construction of section 915, subdivision (e), we conclude there is no merit to plaintiff's contention she complied with the government claim presentation requirement. Plaintiff's failure to have presented her government claim to the secretariat bars all of her personal injury claims. (*DiCampli*, *supra*, 55 Cal.4th at pp. 991-997; *Life v. County of Los Angeles*, *supra*, 227 Cal.App.3d at pp. 899-900.)

[Part V(F) is deleted from publication.]

F. Plaintiff's Other Contentions

Plaintiff makes several other contentions which warrant brief comment. First, plaintiff contends that there is a triable controversy as to whether the secretariat actually received the government claim delivered to the Victim Compensation and Government Claims Board. Plaintiff relies on the January 17 and February 24, 2012 letters from the Victim Compensation and Government Claims Board addressed to Mr. Bennett, her attorney. As previously noted, both of those documents contain the notation near the bottom of the page: "Judicial Council, Attn: Michael Bergeisen." Plaintiff reasons that this notation creates a triable controversy as to whether the government claim accompanied the January 17 and February 24, 2012 letters. Hence, plaintiff argues that Mr. Bergeisen's receipt of the two letters creates a triable controversy as to whether defendants actually received the government claim.

However, there is *no* evidence the government claim accompanied the letters. Defendants sustained their initial burden of showing the government claim sent to the Victim Compensation and Government Claims Board was not received by the secretariat. Ms. Downs's declaration expressly states that when she receives legal process, that event is noted in an official log. Further, Ms. Downs had searched the secretariat's official log and plaintiff's government claim had never been received. This shifted the burden of producing evidence to plaintiff. Section 437c, subdivision (p)(2) states: "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a

21

triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . shall set forth the specific facts showing that a triable issue of material fact exists. . . ." Where the opposition only presents speculation or mere possibilities in lieu of specific facts, summary judgment should be entered if the burden of production has shifted. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 490; *Doe v. Salesian Society* (2008) 159 Cal.App.4th 474, 481; *Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 11.)

Here, the government claim was presented to the wrong agency. The sole evidence that it was presented to the secretariat is that copies of two letters were served upon Mr. Bergeisen, an official with the council. There are no specific facts, even when the brief notation at the bottom of the two letters is liberally construed, that the actual government claim accompanied the letter. Thus, none of plaintiff's substantial compliance contentions rise to the level of a triable controversy.

Second, plaintiff argues that defendants are equitably estopped from asserting that she failed to comply with the government claims presentation requirement. Plaintiff relies upon the January 17 and February 24, 2012 letters from the Victim Compensation and Government Claims Board addressed to Mr. Bennett, her attorney. Plaintiff argues that neither letter states she improperly presented her government claim to the wrong entity. In this regard, plaintiff argues that the State of California is the "governing body" of defendants. We are unpersuaded.

The Victim Compensation and Government Claims Board is an executive branch entity. Defendants are part of a separate branch of government. There is no merit to the argument that defendants are, in a relevant legal sense, governed by the State of California. In any event, plaintiff relies upon decisional authority concerning estoppel to assert a statute of limitations defense in the government claims context: "'It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely

claim by some affirmative act. [Citations.] Estoppel most commonly results from misleading statements about the need for or advisability of a claim; actual fraud or the intent to mislead is not essential. [Citation.]' (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445; see also *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1044-1045." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 744.) No misconduct of this sort was perpetrated by any employee of defendants. (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1065; *Orr v. City of Stockton* (2007) 150 Cal.App.4th 622, 636.)

Further, there is no evidence plaintiff's attorneys detrimentally relied on any representations made in January 17 and February 24, 2012 letters from the Victim Compensation and Government Claims Board. Detrimental reliance is an element of estoppel argument in the claims presentation context. (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305; *Ortega v. Pajaro Valley Unified School Dist.*, *supra*, 64 Cal.App.4th at p. 1044.) In *Ortega*, our colleague Retired Presiding Justice Christopher C. Cottle explained: "Claims of estoppel have been rejected, however, where the plaintiff cannot show calculated conduct or representations by the public entity or its agents that induced the plaintiff to remain inactive and not to comply with the claims-presentation requirements. (See, e.g., *Calabrese v. County of Monterey* (1967) 251 Cal.App.2d 131; *DeYoung v. Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858; *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1786.)" (*Ortega v. Pajaro Valley Unified School Dist.*, *supra*, 64 Cal.App.4th at p. 1045; accord *Castaneda v. Department of Corrections & Rehabilitation, supra,* 212 Cal.App.4th at p. 1064.) Plaintiff presented no evidence either she or her counsel were induced not to file her government claim with the secretariat. There is no triable controversy as to whether defendants are estopped to assert plaintiff's failure to comply with the government claims presentation obligation.

[The balance of the opinion is to be published.]

23

## VI.  DISPOSITION

The mandate petition is granted.  Upon remittitur issuance, the summary judgment motion is to be granted.  Defendants, the Judicial Council of California and Administrative Office of the Courts, are to recover their costs incurred on appeal from plaintiff, Mari Bean.

CERTIFIED FOR PARTIAL PUBLICATION

TURNER, P. J.

We concur:

KRIEGLER, J.

MINK, J.[*]

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24