[Civ. No. 24191.   Second Dist., Div. One.   June 6, 1960.]

BETTY AGOVINO, Appellant, v. RICHARD KUNZE, Respondent.

Harvey G. Cooper for Appellant.

Gilbert, Thompson & Kelly for Respondent.

LILLIE, J.—Plaintiff, a passenger in an automobile driven by Betsy Parker, sued for damages for injuries sustained in a collision between her car and one driven by Gary Miner. The automobile driven by defendant Richard Kunze at no time came in contact with the Parker vehicle. Plaintiff predicated her claim on the theory that at the time of the collision defendant and Gary Miner, two minors, were racing their cars north on Laurel Grove Avenue and that, although defendant's car did not come in contact with the one in which she was riding, his conduct was negligent and the proximate cause of the accident. The matter was heard by a jury; but at the conclusion of plaintiff's case, defendant moved for a nonsuit. This appeal is from the judgment entered on the trial court's order granting the motion.

The issue on appeal is whether there is in the record before us substantial evidence (*Towt* v. *Pope,* 168 Cal.App.2d 520 [336 P.2d 276]) from which the jury could have reasonably inferred that defendant was racing his vehicle with that of Gary Miner at the time of the impact between the Parker and Miner cars, that he was negligent, and that such negligence was a proximate cause of the collision.

When considering a motion for nonsuit the lower court is bound "to accept and treat as true every piece of evi-

dence which tends to establish the plaintiff's case and to reject all which tends to disprove it" (*Williamson* v. *Pacific Greyhound Lines,* 78 Cal.App.2d 482 [177 P.2d 977]); and inasmuch as negligence and proximate cause may be established by circumstantial evidence (*Jones* v. *Hotchkiss,* 147 Cal.App.2d 197 [305 P.2d 129]), in determining whether a prima facie case has been made out, it is the duty of the court, when different inferences as to negligence and/or proximate cause may be drawn from the evidence, to submit the question to the jury (*Johnson* v. *Nicholson,* 159 Cal.App.2d 395 [324 P.2d 307]). Following these rules and those applicable on appeal from a judgment entered on a lower court's order granting the motion, and scrutinizing the evidence in the light most favorable to plaintiff, indulging all reasonable inferences therefrom and resolving all conflicts in her favor, we conclude that there is substantial evidence in the record to establish a prima facie case for plaintiff; and that the issue of negligence and proximate cause should have been submitted to the jury.

It is undisputed that on the day of the accident defendant was operating a black 1950 Pontiac automobile, and Gary a green 1949 Oldsmobile convertible; that the two were minors and close friends; that, immediately prior to the accident which occurred at approximately 4 p.m., they had been together and were separately operating their automobiles, traveling north on Laurel Grove Avenue, defendant in the lead, approaching the intersection of Erwin Street; that plaintiff was a passenger in an automobile operated by Betsy Parker which was slowly traveling west on Erwin Street, approaching the intersection of Laurel Grove Avenue; that upon passing through the intersection the Parker car was struck by the green Oldsmobile operated by Gary traveling north on Laurel Grove Avenue; that the defendant's car had already gone through the intersection and did not come in contact with Mrs. Parker's vehicle; that after the accident defendant returned to the scene in company with a friend in a different car; and that plaintiff was injured as a result of the collision.

Four witnesses testified for plaintiff; Betsy Parker, Barbara Giardina, Gary Miner and plaintiff; defendant was called by her under section 2055, Code of Civil Procedure. She claims no assistance from the testimony of either Gary Miner or the defendant. As to the testimony of the two boys, it will be disregarded insofar as it is favorable to defendant (*Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679 [269 P. 529]; *Young* v. *Bank of America,* 95 Cal.App.2d 725 [214 P.2d 106, 16 A.L.R.2d

1155]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529]; *Karstensen* v. *Western Transportation Co.*, 93 Cal.App. 2d 435 [209 P.2d 47]). In any event, defendant and Gary told substantially the same story. They both denied racing. Defendant, however, did testify that they had agreed to meet at the park; that he drove north on Laurel Grove toward the park, passing through the intersection of Erwin Street, and when a block and a half beyond (90 seconds later) he heard a crash; and that he drove back to the corner to see what had happened, advised Gary's two brothers of the accident and returned to the scene with a friend in the latter's car because his engine was overheating.

Mrs. Giardina was a stranger to plaintiff and Mrs. Parker and had never known or seen them before the accident. She testified that defendant and Gary Miner, for 45 minutes or longer prior to the accident, had been racing their cars along Laurel Grove Avenue through the intersection at Erwin Street. At the time, she was attending a birthday party for her nephew at a park located near the intersection of Laurel Grove and Erwin. She had arrived at the park around 3 o'clock and for 45 minutes or longer until the collision she observed defendant and Gary—defendant in a black 1949 or 1950 Pontiac and Gary in a green Oldsmobile convertible in the early 50's— racing each other along Laurel Grove Avenue. They raced both ways, north and south, "they would race up and they would race back" and go through the intersection of Erwin; they would turn around somewhere near Oxnard at one end then come back again, race up to the end of Laurel Grove through the intersection of Erwin toward Denny where the pavement stops, and turn around there and "brodie around" and return. Describing the manner of their racing Mrs. Giardina testified that both cars were "traveling pretty fast . . . close to 45 or 50, or maybe even a little faster . . . at least 45 or 50"; that they would "start off side by side but one time one would be in front and the next time the other would be in front," maybe a "whole car length at times, or a half car length at times"; that she saw them race along Laurel Grove Avenue "at least five or six different times up and back" for about 45 minutes or longer before the crash; that they did not race constantly, but would start off even, race, then sit and talk, pull up alongside of one another, "kid around" and race again. Their racing was so apparent that she and others in the park discussed it, and she testified "(W)ell, all of us girls were remarking on it." She positively identified the defendant as

the driver of the black car and Gary as the driver of the green vehicle. She further testified that just before the collision she last saw the two cars racing north on Laurel Grove "going toward Denny from Oxnard . . . toward us," just a "couple of minutes" before she heard the crash. She did not actually see the impact, but upon hearing it, she looked to see if her children were safe and then proceeded immediately to the scene of the collision at the intersection of Laurel Grove and Erwin; that she saw there the green car facing Denny on Laurel Grove Avenue, Gary Miner, the Parker vehicle, Mrs. Parker and the plaintiff. She did not then see the black car or the defendant, but shortly thereafter he arrived at the scene with another boy in a different car.

Betsy Parker testified that she was traveling west on Erwin and going very slowly into the intersection; she saw two cars to her left on Laurel Grove "one on each side, half way down the street . . . one on each side of the street . . . one was very dark, maybe black or dark green." She testified further that both cars were going "very fast because they were half way down the street and I thought they were parked there. When I looked again they were practically on top of me. I was half way—then I stepped on the gas and crossed the intersection." She did not then know which car hit her, she was knocked unconscious.

Plaintiff testified she was looking straight ahead; that the Parker vehicle had crossed the intersection of Laurel Grove and Erwin when "she (Mrs. Parker) let out a howl and she said ' (W)here did this black car come from?' ''; that the last she recalled hearing was Mrs. Parker "yelling 'My God, where did that black car come from?' '' The impact threw Mrs. Parker out of the car onto the sidewalk and the plaintiff out of her shoes unconscious in the car.

A review of the plaintiff's case leads us to the conclusion that it was for the jury to determine the manner of defendant's driving and whether the same was done in concert with Gary Miner. The evidence, both direct and circumstantial, is substantial and if believed by the jury is more than sufficient to prove that, both immediately before and at the time of the collision, defendant was racing his vehicle with the car involved in the collision in violation of section 601.5, Vehicle Code,* thus establishing a prima facie case of negligence as a matter of law. Section 601.5, subdivision (a), Vehicle Code, provides that "(N)o person shall engage in any motor

---

*Reporter's Note: Section as numbered prior to 1959 recodification.

vehicle speed contest or exhibition of speed on a highway and no person shall aid or abet in any such motor vehicle speed contest or exhibition on any highway." Factually, the record at this stage of the trial contains sufficient evidence to support a finding that defendant was engaged in and aided and abetted in an unlawful speed contest with Gary Miner, along Laurel Grove Avenue through the Erwin Street intersection, at the time of the collision between the Parker and Miner cars. He was familiar with the neighborhood—he knew that the two streets intersected at a point surrounded by the activity of residents who lived in the area, and adults and children who frequented the nearby park; and that Laurel Grove Avenue along which he raced his car was intersected by various residential cross streets, and had located thereon Victory-Van Owen Park in which children played and picnicked. ■ That a violation of section 601.5, subdivision (a), Vehicle Code, constitutes prima facie evidence of negligence as a matter of law is borne out by the general rule found in *LeBlanc* v. *Browne,* 78 Cal.App.2d 63 [177 P.2d 347]. "This principle, however, is subject to the limitation that recovery may be had only if the violation is the proximate cause of the injury" (p. 72).

Respondent in his brief (p. 14) concedes the proximate cause in the instant case, if there is substantial evidence of racing. He says "it is not necessary for us to argue or to discuss whether or not if two cars are actually racing immediately before an accident the car which does not make the contact and is not involved physically in the collision can be held a proximate cause of the accident. We freely concede that where the evidence indicated racing it may be properly inferred that the activities of a noncontacting driver were a concurring proximate cause of the accident."

There are several theories, however, on the basis of the evidence offered by the plaintiff, justifying a determination of the jury that defendant's negligence was the proximate cause of the accident. ■ Normally, as in the case of negligence, proximate cause is a question of fact (*Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872]; *Alwood* v. *City of Los Angeles,* 139 Cal.App.2d 49 [293 P.2d 69]). We have held that the record before us establishes substantial evidence from which the jury could find that defendant was engaged in an unlawful speed contest with Gary Miner; and whether the two boys, in so many words agreed to race, or from their conduct a tacit mutual

understanding of such an agreement may be inferred, the collision with Gary's car nevertheless occurred during the time they were engaged in racing each other. ■ The fact that defendant's automobile did not actually come into contact with the Parker car is of little importance on the issue of proximate cause. In the case of *People* v. *Kemp,* 150 Cal. App.2d 654 [310 P.2d 680], in which defendant was accused with one Coffin of manslaughter, the evidence disclosed that the two were racing their separate automobiles and that as they approached an intersection, the Coffin car collided with another vehicle. Defendant's car did not come in contact with any other, and he drove on. He advanced to the court much the same position here argued by defendant—that his automobile struck nothing; Coffin's conduct was neither attributable nor imputable to him; he neither interfered with nor had control of Coffin's activities; and that even though he may have been guilty of reckless speeding and racing, his conduct could not be the proximate cause of the accident. The court in rejecting his contention stated at page 659: "The evidence here strongly indicates that Kemp and Coffin were inciting and encouraging one another to drive at a fast and reckless rate of speed on a residential street, and as they closely approached a blind intersection. It was by the merest chance that Kemp was able to avoid hitting the other car, and that Coffin was not. Only a matter of a split second and a few inches made the difference. They were both violating several laws, the acts of both led directly to and were a proximate cause of the result, and the fact that the appellant happened to narrowly escape the actual collision is not the controlling element. The evidence is sufficient to show that they were not acting independently of each other, and that they were jointly engaged in a series of acts which led directly to the collision."

■■ Discussing the accepted definition of proximate cause and the applicability of the general rule that defendant's negligence need not be the sole cause of the injury and it is enough that it is a contributory factor which is the proximate cause thereof (*Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225 [282 P.2d 69]), and where two or more persons jointly engage in the commission of a tort they are jointly and severally liable (*Farrell* v. *Placer County,* 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]), appellant directs our attention to *Reader* v. *Ottis,* 147 Minn. 335 [180

N.W. 117]. In that case the evidence showed that immediately up to the time of the accident defendant Jester and one operating a car owned by defendant Ottis were racing. Plaintiff, an occupant of the Jester car, brought an action to recover for personal injuries resulting from overturning for failure to negotiate a curve, due to inability to pass the Ottis car, and hitting a dirt shoulder. The Ottis car did not touch the vehicle in which plaintiff was riding. The lower court granted a motion to dismiss against Ottis on the ground that no negligence on his part was proved. In reversing the order the appellate court held that it was for the jury to determine the manner of driving and whether the same was done in concert. ■■■ In discussing the question whether there was sufficient evidence to sustain a finding by the jury that defendant was guilty of negligence which contributed to the injury, the court stated at page 118: ''The law imposes upon all persons using a public highway the obligation to exercise ordinary care to avoid inflicting injury on others. Our highways are not designed or maintained as places for racing automobiles, and those who use them for such purpose do so at their peril. . . . ■■■ The rule is well settled that where two or more tort-feasors, by concurrent acts of negligence which, although disconnected, yet, in combination inflict injury, all are liable.''

Mrs. Parker's testimony gives another reason why defendant's conduct could well be considered by the trier of fact as the proximate cause of the accident. She testified: ''When I looked again they were practically on top of me. I was half way—then I stepped on the gas and crossed the intersection.'' It is clear that upon seeing the two vehicles, one driven by defendant and the other by Gary Miner, one on either side of the street, bearing down on her at a fast rate of speed, Mrs. Parker accelerated her car to get out of the way, which acceleration ultimately caused her to come in contact with the automobile driven by Gary Miner; and that defendant's negligent conduct set in motion the events which led or contributed to the collision between Mrs. Parker's car and Gary's Oldsmobile. ■■■ The rule laid down in *Merrill* v. *Finigan,* 133 Cal.App. 101, 104 [24 P.2d 188], ''that one who negligently sets in motion a series of events stands as sponsor of the result and liable therefor,'' and cited by the court in *Rozzen* v. *Blumenfeld,* 117 Cal.App.2d 285 [255 P.2d 850], is applicable here. In the latter case the

court stated "Where A has so operated his vehicle as to imperil the car or truck of B, and B, in attempting to avert the apprehended collision, has caused his vehicle to collide with the vehicle of C, the last named may hold A liable for the injury and damage sustained. (Citations)." (P. 290.) For the foregoing reasons the judgment is reversed.

Wood, P. J., and Fourt, J., concurred.