Filed 7/22/15 Unmodified version attached

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MIRIUM NAVARRETE et al., | D067454 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. RIC1100243) |
| HAYLEY MEYER, | ORDER MODIFYING OPINION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 22, 2015, be modified as follows:

On page 8, second paragraph, line 8, the sentence beginning with "Meyer's complaint need only . . . " should be changed to "Navarette's complaint need only . . . ."

The full sentence should now read as follows:

> Navarette's complaint need only meet fact-pleading requirements; it must contain " '[a] statement of the facts constituting the cause of action, in ordinary and concise language' " and should "allege ultimate facts that 'as a whole apprise[] the adversary of the factual basis of the claim.' "

There is no change in judgment.

McINTYRE, Acting P. J.

Copies to: All parties

Filed 6/22/15 Unmodified version

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MIRIAM NAVARRETE et al., | D067454 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. RIC1100243) |
| HAYLEY MEYER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Matthew Perantoni, Judge.  Reversed.

Shernoff Bidart Echeverria Bentley and Gregory L. Bentley, Steven M. Schuetze, Law Office of Luis A. Carrillo and Luis A. Carrillo, Rogriguez & Associates and Daniel Rodriguez, for Plaintiffs and Appellants.

LaFollette Johnson DeHaas Fesler & Ames and Donald C. Fesler, Law Offices of David J. Weiss and David J. Weiss, Greines, Martin, Stein & Richland and Marc J. Poster for Defendant and Respondent.

Plaintiffs and appellants Miriam Navarrete and her minor children Bryan, Stephanie, and Steven Navarette (collectively Navarrete) appeal from a summary

judgment in favor of defendant and respondent Hayley Meyer on plaintiffs' claims for violation of Vehicle Code section 21701 and civil conspiracy arising from allegations that Meyer, a passenger in a vehicle, told the driver to drive at an unsafe speed over a road Meyer knew had unusual conditions that would cause the car to become airborne, resulting in a fatal accident. In granting summary judgment, the trial court ruled there was no evidence to suggest Meyer's act of telling the driver to drive faster affected his control over the vehicle, and therefore no triable issues of material fact as to either cause of action. Navarrete contends the evidence raises triable issues for a jury as to whether to impose joint liability on Meyer for her conduct on the night in question on a theory of concert of action or conspiracy, and also as to whether she unreasonably interfered with the safe operation of a vehicle within the meaning of Vehicle Code section 21701 to support a cause of action. We agree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

On November 26, 2009, Meyer was the front passenger in a vehicle driven by her friend Brandon Coleman. Another person, Levi Calhoun, was in the back seat. While driving to a nearby drugstore, Meyer told Coleman to turn onto Skyview Drive as a shortcut. Skyview Drive is a residential street with a 25 mile-per-hour speed limit. Meyer had been on Skyview Drive many times before that day, and she knew it had dips that would cause a car traveling at a high rate of speed to become airborne. While Coleman was making the turn onto Skyview Drive, Meyer told him about the dips, that it was fun to drive fast on them, and that he should do it. Shortly after Coleman turned onto the street, Meyer told Coleman to "go faster." Coleman asked Calhoun if he should

2

speed up, and Calhoun responded, "You probably shouldn't because you may mess up the car." Coleman sped up. He accelerated to such a degree that he caught air from the dips and lost control of the car, which veered sharply to the right and collided into Navarette's parked vehicle while Navarrete's husband, Esteban Soto, was attempting to put one of their children in a car seat. Soto's legs were severed and he was killed by the impact. A data recorder from Coleman's car indicated its speed was 81 miles per hour five seconds before the impact, and 71 miles per hour one second before the impact. Meyer estimated the car's speed at about 70 miles per hour. Meyer admitted it was her idea to drive fast on Skyview Drive.

Navarette sued Coleman and the County of Riverside, and eventually filed a first amended complaint naming Meyer as a Doe defendant. She alleged, among others, causes of action against Meyer for violation of Vehicle Code section 21701[1] (fourth cause of action) and civil conspiracy (fifth cause of action). In the fourth cause of action, Navarette alleged Meyer willfully interfered with Coleman or the mechanism of the vehicle in such manner as to affect Coleman's control of the car; that Meyer's acts caused a lapse of Coleman's control as to cause serious injury and death; and that certain physical features of Skyview Drive increased and intensified the dangers to the decedent and plaintiffs from Coleman and Meyer's conduct. In the fifth cause of action for conspiracy, Navarrete alleged that Coleman and Meyer "formed an oral and/or implied

---

[1]    Vehicle Code section 21701 provides in part: "No person shall wilfully interfere with the driver of a vehicle or with the mechanism thereof in such manner as to affect the driver's control of the vehicle."

agreement [to] commit a wrongful act, including but not limited to driving on Skyview Drive at unsafe speed" and "[s]uch agreement, conspiracy, and/or joint venture between Defendants to cause wrongful acts caused injuries to Plaintiffs and Decedent." She alleged that the "conspiracy and agreement is evidenced by the fact, inter alia, that [Coleman and Meyer]: (a) aided, abetted, approved, ratified, and/or deliberately and knowingly failed, refused and/or refrained from intervening in or preventing or stopping the wrongful conduct; and/or (b) deliberately and knowingly failed, refused, and/or refrained from promptly and accurately reporting such wrongful conduct."

Meyer moved for summary judgment or alternatively summary adjudication. She argued Navarette's fourth and fifth causes of action were without merit; that undisputed facts showed she did not interfere with Coleman's control of the vehicle as needed to impose liability under Vehicle Code section 21701, and there was no evidence of a tacit agreement between her and Coleman to support a conspiracy cause of action or conspiracy to commit any tort. Meyer argued that simply encouraging Coleman to increase his speed was insufficient to support liability under either cause of action. In opposition, Navarette argued Meyer was liable as a joint tortfeasor for Coleman's negligence under the Restatement Second of Torts, section 876 and as a coconspirator; that Meyer "formulated and communicated the plan for . . . Coleman to race at high speed on Skyview Drive to become airborne when he hit the dips in the roadway"; and "[v]erbal encouragement and solicitation to commit a wrongful act can constitute a civil conspiracy." Navarette maintained the evidence demonstrated "an agreement and a plan to commit the wrongful act" because "[a]s a result of and in response to Meyer's

4

instructions, Coleman began accelerating."  According to Navarette, the court could infer that Coleman was trying to impress Meyer and acquiesced to her wishes, and an agreement could be inferred from his actions in response to her encouragement.  Finally, Navarette argued there were triable issues of material fact as to whether Meyer unreasonably interfered with the safe operation of the vehicle within the meaning of Vehicle Code section 21701 by her words and actions:  "[A] reasonable inference from the evidence is that as the engine roared and the vehicle started accelerating down the road, that [Meyer's] instruction to 'Go faster' was unlikely stated in a calm, sterile manner, but rather the instruction itself was animated and enthusiastic."

The trial court granted summary judgment in Meyer's favor.  It acknowledged that the material facts were undisputed; that Meyer told Coleman to drive faster to catch air over the dips on Skyview Drive, but ruled "there is no evidence to suggest that Meyer's act of telling Mr. Coleman to drive faster affected Mr. Coleman's control over the vehicle" and thus there was no triable issue of material fact as to the fourth cause of action for violation of Vehicle Code section 21701.  The court applied the same reasoning to grant summary judgment on the conspiracy cause of action.

Navarette filed this appeal.

## DISCUSSION

### I. *Standard of Review*

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.  [Citation.]  " 'We review the trial court's decision de novo,

5

considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1249-1250; see *DiCola v. White Bros. Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 675 (*DiCola*).)

"A defendant meets his or her burden upon a motion for summary judgment or summary adjudication if that party has proved 'one or more elements of the cause of action . . . cannot be established . . . .' [Citation.] The defendant need not conclusively negate an element of the plaintiff's cause of action, but must only show that one or more of its elements cannot be established. [Citation.] To shift the burden to the nonmoving party, the evidence produced by the moving party must 'persuade the court that there is no material fact for a reasonable trier of fact to find . . . .' [Citation.] The moving party also bears a burden of production 'to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] 'A prima facie showing is one that is sufficient to support the position of the party in question.' [Citation.] [¶] 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists . . . .' " (*DiCola*, *supra*, 158 Cal.App.4th at p. 674.)

" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.] The materiality of a disputed fact is measured by the pleadings [citations],

6

which 'set the boundaries of the issues to be resolved at summary judgment.' " (*Conroy v. Regents of University of Cal.*, *supra*, 45 Cal.4th at p. 1250; see also *Coral Const., Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *Judicial Council of California v. Superior Court* (2014) 229 Cal.App.4th 1083, 1090.)  Nevertheless, "[w]hen a motion for summary judgment is used to test whether the complaint states a cause of action, the court will apply the rule applicable to demurrers and accept the allegations of the complaint as true." (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118.)  " ' "[T]he allegations must be liberally construed with a view to attaining substantial justice among the parties." [Citation.]  "Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory." ' " (*Ibid*.; see also *Varshock v. California Dept. of Forestry and Fire Protection* (2011) 194 Cal.App.4th 635, 651-652 [in reviewing a summary judgment to determine the legal effect of the complaint its allegations must be liberally construed under Code of Civil Procedure section 452].)  We ignore erroneous or confusing labels in the pleading and look to its gravamen to determine what cause of action is stated.  (See *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 959.)

On review of an order granting summary judgment the appellate court owes the superior court no deference; we are not bound by its stated reasons because we review its ruling not its rationale.  (*Coral Const., Inc. v. City and County of San Francisco*, *supra*, 50 Cal.4th at p. 336; *Judicial Council of California v. Superior Court*, *supra*, 229 Cal.App.4th at p. 1090.)

7

## II. *Threshold Issues*

We initially address and reject Meyer's argument that Navarette has improperly asserted a new cause of action on appeal—aiding and abetting an exhibition of speed in violation of Vehicle Code section 23109[2]—and that any such claim is barred by the "theory of the trial" doctrine. (See *DiCola*, *supra*, 158 Cal.App.4th at p. 676 [an argument or theory will not be considered if it is raised for the first time on appeal; a party is not permitted to change his position and adopt a new and different theory on appeal].) Meyer points out there is no reference to Vehicle Code section 23109 or the words aiding and abetting an exhibition of speed in Navarette's operative complaint.

Meyer's contention fails under the above-summarized principles permitting this court to look beyond the labels of the pleadings and to the gravamen of the claim to assess whether the first amended complaint states a cause of action. Because Navarette alleges that Meyer "formed an oral and/or implied agreement" or joint venture with Coleman to commit a wrongful act, "including but not limited to driving on Skyview Drive at unsafe speed" and that Mayer "aided [or] abetted" the "wrongful conduct," her allegations encompass such a theory notwithstanding her failure to specifically reference Vehicle Code section 23109. Meyer's complaint need only meet fact-pleading requirements; it must contain " '[a] statement of the facts constituting the cause of action,

---

[2] Subdivision (c) of Vehicle Code section 23109 provides: "A person shall not engage in any motor vehicle exhibition of speed on a highway, and a person shall not aid or abet in any motor vehicle exhibition of speed on any highway." The Vehicle Code defines a "Highway" as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street." (Veh. Code, § 360.)

in ordinary and concise language' " and should "allege ultimate facts that 'as a whole apprise[] the adversary of the factual basis of the claim.' " (*Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 415; see Code Civ. Proc., § 425.10, subd. (a)(1).) And Navarette raised these very issues in opposition to Meyer's summary judgment motion, so there is no basis to claim Meyer was without opportunity to address the questions in the trial court.

Meyer further contends Navarette's aiding and abetting an exhibition of speed theory cannot be considered on appeal because "it is premised on a factual theory 'the consequences of which are open to controversy and were not put in issue or presented at the trial' . . . and are not such that they 'could not be altered by the presentation of additional evidence.' " Her apparent reasoning is that the aiding and abetting theory is "flatly inconsistent" with Navarette's pleaded theory of interference with Coleman's operation of the vehicle; she maintains interference on the one hand and aiding and abetting, on the other, are "antithetical concepts involving entirely opposite states of mind" and thus the theories cannot coexist. Meyer compares the circumstances to those in *Sumner Hill Homeowners' Assn. Inc. v. Rio Mesa Holdings* (2012) 205 Cal.App.4th 999.

In *Sumner Hill*, "[a]t every step of [the] case" (*Sumner Hill Homeowners' Assn. Inc. v. Rio Mesa Holdings*, *supra*, 205 Cal.App.4th. at p. 1025) from the filing of the operative complaint to the court's statement of decision after trial, the defendants argued a map violated the Subdivision Map Act, but then in an "eleventh-hour turnabout" on appeal took the entirely contrary position that the County properly approved the map,

9

which complied with that law. (*Id*. at pp. 1025-1026.) The appellate court in *Sumner Hill* declined to consider the new position, reasoning it would be unfair to allow the defendants to reinvent the case on appeal and there was no opportunity for the parties or trial court to consider the ramification of such a position or how it might relate to other issues, evidence or arguments. (*Id*. at pp. 1025, 1027.)

The theory of the trial principle of *Sumner Hill* does not apply here. The essential facts of Meyer's conduct and the accident are not in dispute; indeed Meyer conceded that for purposes of the motion, "she wanted Coleman to speed over the dips and she told him to do so." The trial court observed in its minute order that "[t]he facts in this case are not disputed" that "Meyer did tell Mr. Coleman to drive faster to 'catch air' over the speed bumps." We see nothing about the basic factual theory of Navarette's case that was not presented in the trial court. Rather, we are to assess whether these facts support liability under any pleaded theory or cause of action so as to defeat Meyer's summary judgment motion. Nor do we agree that a theory that Meyer aided and abetted Coleman's wrongful speeding is antithetical to the notion that she interfered with Coleman's control of the vehicle. As we explain more fully below, where a passenger encourages a driver to speed on a road that the passenger knows can render the speeding car airborne, it is for a trier of fact to decide whether the passenger's actions constitute interference within the meaning of Vehicle Code section 21701.

III. *Joint Liability Under Concert of Action/Aiding and Abetting Theory*

Navarette contends that Meyer is jointly liable for Coleman's negligent conduct under a concert of action theory as set forth in section 876(b) of the Restatement Second

10

of Torts and *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588. She maintains Meyer abetted, urged and encouraged Coleman to engage in the prohibited activity of unlawful exhibition of speed within the meaning of Vehicle Code section 23109 for the purpose of the vehicle's tires losing traction and becoming airborne. Relying in part on *Agovino v. Kunze* (1960) 181 Cal.App.2d 591 (*Agovino*), she asserts Meyer as a passenger owed a duty under that statute not to aid or abet Coleman in such action, and is jointly liable for the consequences of such conduct.

Though Navarette's contentions are couched on the merits, our role on summary judgment is simply to decide whether the parties possess evidence requiring the fact-weighing procedures of a trial. (*Soto v. County of Riverside* (2008) 162 Cal.App.4th 492, 496; *City of Oceanside v. Superior Court* (2000) 81 Cal.App.4th 269, 273.) "The purpose of the summary judgment procedure is *not to try the issues*, but merely to determine *whether there are issues to be tried*." (*Orser v. George* (1967) 252 Cal.App.2d 660, 668.) We view the evidence most favorably to Navarette and ascertain whether it raises a triable issue of material fact for a jury on any cause of action reasonably alleged in the first amended complaint. Undertaking that analysis, we perceive a straightforward basis to reverse the summary judgment.

A. *Legal Principles*

Section 876 of the Restatement Second of Torts provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial

11

assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." In *Sindell v. Abbott Laboratories*, *supra*, 26 Cal.3d 588, the California Supreme Court determined whether a complaint stated a cause of action under the Restatement's "concert of action" doctrine, and explained these principles by quoting Dean Prosser's comment that " 'those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him. [¶] Express agreement is not necessary, and all that is required is that there be a tacit understanding . . . ." (*Sindell*, at p. 604, quoting Prosser, Law of Torts (4th ed. 1971) § 46, p. 292.)

The concert of action theory of group liability "may be used to impose liability on a person who did not personally cause the harm to plaintiff, but whose ' "advice or encouragement to act operates as a moral support to a tortfeasor[,] and if the act encouraged is known to be tortious[,] it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act." ' " (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 521, quoting *Chavers v. Gatke Corp.* (2003) 107 Cal.App.4th 606, 617.) The doctrine is likened to aiding and abetting. (See *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846 [describing concert of action theory

12

under the Restatement as aiding and abetting]; *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325-1326 [referencing the Restatement Second of Torts, section 876 in describing aiding and abetting liability]; *Casey v. U.S. Bank National Ass'n* (2005) 127 Cal.App.4th 1138, 1144; *Gerard v. Ross* (1988) 204 Cal.App.3d 968, 983 ["In the civil arena, an aider and abettor is called a cotortfeasor"].)[3]

Courts have applied the concert of action/aiding and abetting principles in various civil contexts, including "the 'drag race' and like cases, opinions in which courts held the reciprocal ' "inciting and encouraging one another to drive at a fast and reckless rate of speed" ' furnished the necessary 'proximate cause' to support joint and several liability of both racers, including the defendant whose car did *not* strike the plaintiff." (*Chavers v. Gatke Corp.*, *supra*, 107 Cal.App.4th at p. 616.)

---

[3]  " ' "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." ' " (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 574, quoting *Fiol v. Doellstedt*, *supra*, 50 Cal.App.4th at pp. 1325-1326.)  Though closely related to conspiracy (*Richard B. LeVine, Inc*., at p. 574; *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 78), aiding and abetting is a distinct theory.  (See *Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 345; *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 823, fn. 10 [describing differences between conspiracy and aiding and abetting theories; aider and abettor's conduct need not, as separately considered, constitute a breach of duty]; *Saunders v. Superior Court*, *supra*, 27 Cal.App.4th at pp. 845-846.)  "[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." (*Howard v. Superior Court of Los Angeles County* (1992) 2 Cal.App.4th 745, 749.)

*Agovino*, *supra*, 181 Cal.App.2d 591 is one such case. There, a defendant's joint liability was predicated on his participation in a drag race with a third party, Gary Miner, even though the defendant's vehicle did not contact the car in which the plaintiff was a passenger. (*Id*. at p. 593.) The appellate court reversed a nonsuit granted at the close of the plaintiff's case, stating "it was for the jury to determine the manner of defendant's driving and whether the same was done in concert with Gary Miner. The evidence, both direct and circumstantial, is substantial and if believed by the jury is more than sufficient to prove that, both immediately before and at the time of the collision, defendant was racing his vehicle with the car involved in the collision in violation of [Vehicle Code] section 601.5, [former Vehicle Code section 23109], thus establishing a prima facie case of negligence as a matter of law. [That section] provides that '(N)o person shall engage in any motor vehicle speed contest or exhibition of speed on a highway and no person shall aid or abet in any such motor vehicle speed contest or exhibition on any highway.' Factually, the record at this stage of the trial contains sufficient evidence to support a finding that defendant was engaged in and aided and abetted in an unlawful speed contest with Gary Miner, along Laurel Grove Avenue through the Erwin Street intersection, at the time of the collision between the Parker and Miner cars. [Defendant] was familiar with the neighborhood—he knew that the two streets intersected at a point surrounded by the activity of residents who lived in the area, and adults and children who frequented the nearby park; and that Laurel Grove Avenue along which he raced his car was intersected by various residential cross streets, and had located thereon Victory-Van Owen Park in which children played and picnicked." (*Id*. at pp. 596-597.) The appellate court also

14

determined there was enough evidence of proximate cause to submit the case to the jury:

"[W]hether the two boys, in so many words agreed to race, or from their conduct a tacit mutual understanding of such an agreement may be inferred, the collision with Gary [Miner's] car nevertheless occurred during the time they were engaged in racing each other. The fact the defendant's automobile did not actually come into contact with the [plaintiff's] car is of little importance on the issue of proximate cause." (*Id.* at pp. 597-598.) The court analogized the circumstances to a criminal manslaughter case stemming from two codefendants racing separate cars in which one defendant killed the plaintiff and the other moved on; there, the evidence was " 'sufficient to show that [the defendants] were not acting independently of each other, and that they were jointly engaged in a series of acts which led directly to the collision.' " (*Id.* at p. 597, quoting *People v. Kemp* (1957) 150 Cal.App.2d 654, 659.)[4]

---

[4] A concert of action case decided in the summary judgment context is *Orser v. George*, a wrongful death action in which the trial court granted a summary judgment in favor of multiple defendants. (*Orser v. George*, *supra*, 252 Cal.App.2d at pp. 665-666.) Three defendants were alleged to have fired their guns at mudhens in the direction of the decedent, two of whom alternately fired a pistol, the bullet from which killed the decedent. (*Id.* at pp. 664-666.) The third defendant, James, could not have fired the fatal bullet because he was shooting a rifle. (*Id.* at p. 668.) In part, the *Orser* court reversed the summary judgment in favor of James, the rifle-shooting defendant, on a theory of concerted action reasoning: "[A]lthough he did not fire the fatal bullet, there is evidence (*which may or may not be sufficient to prove him liable at the trial*) creating a question for the trier of fact. This evidence indicates he was firing alternately with [another defendant, Vierra] at the same mudhen, in the same line of fire and possibly tortiously. In other words . . . , the record permits a possibility James knew Vierra's conduct constituted a breach of duty owed [plaintiff] and that James was giving Vierra substantial 'assistance or encouragement'; also that this was substantial assistance to Vierra in a tortious result with James' own conduct, 'separately considered, constituting a breach of

15

B.  *The Evidence Raises Triable Issues of Fact as to Joint Liability Stemming from Coleman Engaging in, and Meyer Aiding and Abetting, an Exhibition of Speed*

We see little to distinguish the facts of this case from those in *Agovino*, *supra*, 181 Cal.App.2d 591.  Construed most favorably to Navarette, the evidence shows that in response to Meyer's urging, Coleman deliberately accelerated his vehicle to well over Skyview Drive's 25-mile-per-hour speed limit for the specific purpose of rendering it airborne such that the tires left the roadway and lost traction, causing the fatal collision.  Indeed, the fact Meyer was a passenger in Coleman's vehicle rather than driving a separate car strengthens the inference that she encouraged and incited him, and that they jointly engaged in a series of acts that led directly to the collision with Navarette's vehicle.  (*Agovino*, at p. 597.)  Meyer was familiar with Skyview Drive and its unique characteristics, and a reasonable fact finder could readily infer she knew other vehicles could be parked or other people would be present on such a residential street.  Meyer attempts to distinguish *Agovino* on grounds "there was no race" in this case and her "conduct as a passenger by itself would not and could not have caused injury to anyone."  But Meyer's encouragement to Coleman to speed from within Coleman's car is not materially different from that of a separate driver encouraging and engaging in a race, and her assertion that she could not cause injury because she was merely a passenger, is the very argument rejected by *Agovino* and other concert of action cases.

---

duty to' [plaintiff]."  (*Id*. at p. 668 [paraphrasing the Restatement of Torts § 876, subdivisions (b) and (c)].)

16

Meyer additionally argues that the evidence does not show Coleman engaged in an exhibition of speed; that "the only reasonable inference . . . is that he lost traction because he wanted to become airborne over some dips in the road" and "[t]here is no evidence that he intended to show off a fast car to his passengers or to anyone else at night in a residential neighborhood." We disagree with Meyer's characterization of the statute and view of the facts.

An early case addressed what the Legislature meant by "exhibition of speed" within the meaning of Vehicle Code section 23109: "Webster's New International Dictionary, 2d Edition, defines . . . exhibition as [an] 'Act or instance of exhibiting for inspection, or of holding forth to view; manifestation; display.' Thus it would appear that [the] section . . . could be violated . . . by one person displaying the speed of his vehicle on the highway to *another person in the first person's car* or in another car." (*In re Harvill* (1959) 168 Cal.App.2d 490, 492-493, italics added.) In *Harvill*, the appellate court held that a trier of fact could reasonably infer that a driver who was " 'revving up' his engine and . . . speeding at a rate of 55-60 miles per hour was exhibiting or displaying the speed of his car to the female occupants of [another car]." (*Id*. at p. 493.)

In *People v. Grier* (1964) 226 Cal.App.2d 360, the appellate court addressed a defendant's contention that the evidence was insufficient to show an exhibition of speed within the meaning of the statute where a police officer testified that during a turn, the defendant's vehicle tires " 'peeled, screeching, losing traction with the roadway.' " (*Id*. at p. 362.) The *Grier* court affirmed, stating: "It is common knowledge that maximum control of a vehicle upon the highway is maintained through the retention of traction

17

between tires and pavement and that, during any process of skidding of the wheels of a vehicle, there is a corresponding diminution of the driver's control over the vehicle. Accordingly, safety measures are designed to reduce the skidding of vehicles, even during the process of reducing speed through the application of brakes. [Citation.] Where a person accelerates a vehicle in such manner as to deliberately cause it to skid, he is not only diminishing his control but increasing the hazard to bystanders or other vehicles from flying gravel. *Whether the action is deliberate or not is for the trier of fact under the circumstances of the particular case.* Obviously, not all cases of tire 'peeling' or 'screeching' would constitute violations of the statute. It is also common knowledge that the deliberate screeching and screaming of tires on the pavement are tension producers which increase nervousness in drivers and others, thereby increasing the likelihood of accident." (*Id.* at p. 363, italics added.) The *Grier* court defined an exhibition of speed broadly, holding that the observer of the exhibition did not need to be known to the defendant or be coupled with the defendant's intent to impress the observer with the speed obtained, and because the defendant's display took place in a "highly developed and populated area," there was sufficient evidence to infer observation by some person or persons. (*Id*. at p. 364.)

The evidence here permits a reasonable jury to infer that Coleman accelerated the vehicle at Meyer's request so Meyer (and possibly Calhoun) could observe and experience the car "gain air," as she had experienced in past trips along that road. This conduct manifestly comes within the ambit of an exhibition of speed under *Harvill*, *Grier*, and Vehicle Code section 23109.

18

Nor do we agree with Meyer's contention that there is no evidence she aided and abetted Coleman. Her claim is premised on the assertion that the law in California does not permit liability for aiding and abetting "unintentional conduct"; that Navarette alleged no intentional tort, only that Coleman acted negligently, and there is no evidence he intended to harm anyone. She argues, "Even if Coleman inadvertently violated the law against an 'exhibition of speed,' which he did not, [Meyer] could not be liable for aiding and abetting such unintentional conduct." However, for purposes of joint liability under a concert of action theory, it suffices that Meyer assist or encourage Coleman's breach of a duty, which Vehicle Code section 23109 imposed upon him (and also upon her not to aid and abet Coleman). (*Agovino*, *supra*, 181 Cal.App.2d 591; see also *Orser v. George*, *supra*, 252 Cal.App.2d at p. 667; *Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303 [civil liability for aiding and abetting commission of a tort has no overlaid requirement of an independent duty, but focuses on whether a defendant knowingly gave substantial assistance to someone who performed "wrongful conduct"], *Mayhugh v. County of Orange* (1983) 141 Cal.App.3d 763, 768 [one may be held jointly liable where his or her negligence in concurrence with the negligence of another has caused a single injury]; *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1415 ["To establish that a defendant is a joint tortfeasor, it must be shown the defendant proceeded tortiously—with intent or negligence"].)

## IV. *Civil Conspiracy*

Navarette further contends Meyer is jointly liable based on civil conspiracy, which can arise from "[v]erbal encouragement and solicitation to commit a wrongful act"; that

19

Meyer "formulated and communicated the plan for . . . Coleman to illegally race at high speed on Skyview Drive to become airborne when he hit the dips in the roadway" and the evidence demonstrates an agreement and plan between them to commit the wrongful act.

Civil conspiracy is not an independent cause of action. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510 (*Applied Equipment*); *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 968.) Instead, it is a theory of co-equal legal liability under which certain defendants may be held liable for "an independent civil wrong" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062; see also *Applied Equipment*, at p. 511; *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44) committed by others. A participant in the conspiracy "effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." (See *Applied Equipment*, at p. 511.) " ' "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design . . . . In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." ' " (*Id*. at p. 511.) " 'The essence of the claim is that it is merely a mechanism for imposing vicarious liability . . . . Each member of the conspiracy becomes liable for all acts done by others pursuant to the conspiracy, and for all damages caused thereby.' " (*Stueve Bros. Farms, LLC v. Berger Kahn*, *supra*, 222 Cal.App.4th at p. 324.)

20

Under a conspiracy theory of recovery, liability depends on the actual commission of a tort. (See *Applied Equipment*, *supra*, 7 Cal.4th at p. 511; *Richard B. LeVine, Inc. v. Higashi*, *supra*, 131 Cal.App.4th at p. 574; *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582 [" '[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act' "].) Liability "presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." (*Applied Equipment*, at p. 511.) And for conspiracy liability, the conspiring defendants must have actual knowledge that a tort is planned and concur in the scheme with knowledge of its unlawful purpose. (*Kidron*, at p. 1582.) Knowledge of the planned tort must be combined with intent to aid in its commission. (*Ibid*.) "An agreement may be tacit as well as express. [Citation.] A conspirator's concurrence in the scheme ' " ' "may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." ' " ' " (*Arei II Cases* (2013) 216 Cal.App.4th 1004, 1024.)

We cannot say on Meyer's summary judgment showing that the evidence is insufficient as a matter of law to support joint liability on a theory of civil conspiracy. As we view it, the evidence raises a triable issue for a jury as to Meyer's co-equal liability on such a theory. Critically, the law imposed on Meyer personally an independent duty not to encourage or assist Coleman in engaging in an unlawful exhibition of speed. (Veh. Code, § 23109.) And for purposes of civil conspiracy, the source of substantive liability arises out of a preexisting legal duty and its breach, and it "makes no difference in the

21

analysis whether the underlying duty is imposed by statute . . . or by the common law." (*Chavers v. Gatke Corp.*, *supra*, 107 Cal.App.4th at p. 614, citing in part *Doctor's Co. v. Superior Court*, *supra*, 49 Cal.3d 39 [involving alleged conspiracy to violate Insurance Code section 790.03].)

Meyer advances several arguments as to why the facts cannot support her liability based on a conspiracy. Though she correctly points out there is no independent cause of action for conspiracy, Meyer asserts any such claim must have an underlying illegal act. Meyer further argues that a conspiracy can be formed only by parties already under a legal duty to the plaintiff, and that Navarette has not identified any duty that Meyer, as a passenger, owed to third persons standing by the roadside. We have already concluded Meyer had an independent duty under Vehicle Code section 23109, which a reasonable jury can find was violated by Coleman's and Meyer's actions. That duty inures to bystanders and other vehicles on the roadways. (See e.g., *People v. Grier*, *supra*, 226 Cal.App.2d at p. 363.) And the cases make clear the parties need only expressly or tacitly agree to commit a tort or "civil wrong," which in this case is met by evidence raising a fact issue whether Coleman and Meyer agreed that Coleman should engage in an exhibition of speed. Meyer's encouragement to Coleman to exceed the speed limit on Skyview Drive, a street with unique dangers, was clearly wrong. The sort of injury that ensued from Coleman's unlawful conduct—the car losing traction or control and striking another vehicle or person on the residential street—was foreseeable, and is the very sort of harm the statute was designed to prevent. (Accord, *Michael R. v. Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1070-1071 [analyzing whether duty of care to third parties was owed

22

by individuals encouraging their friend to shoot a marble with a slingshot at another minor; the complaint sounded in conspiracy and there was a triable issue of fact as to whether the shooter's friends actively encouraged, solicited, or conspired to injure the plaintiff in violation of Penal Code section 653, subdivision (f) as to constitute negligence per se].)

Meyer finally argues, relying on federal or out-of-state authorities, that because Navarette only alleged Coleman was negligent and the evidence does not permit a finding that either she or Coleman intended to harm anyone, there is no basis for liability; that there cannot be a civil conspiracy to commit a negligent act. We acknowledge there is a split within out-of-state authorities, most of which hold that parties cannot conspire to commit a negligent or unintentional act and such a conspiracy is a legal impossibility.[5]

But the law in California remains that a civil conspiracy requires an express or tacit agreement only to commit a civil wrong or tort, which then renders all participants

---

[5]    See e.g., *Koehler v. Pulvers* (S.D.Cal. 1985) 606 F.Supp. 164, 173, fn. 10 ["The act of conspiracy requires two or more persons agreeing to commit intentionally a wrongful act. [Citation.] This court is unaware of California decisional law imposing liability for conspiring to commit negligence"]; *U.S. v. Sdoulam* (8th Cir. 2005) 398 F.3d 981, 987; *Wright v. Brooke Group Ltd.* (N.D.Iowa 2000) 114 F.Supp.2d 797, 837 ["because conspiracy requires an agreement to commit a wrong, there can hardly be a conspiracy to be negligent—that is, to intend to act negligently"]; *Sonnenreich v. Philip Morris, Inc.* (S.D.Fla. 1996) 929 F.Supp. 416, 419 ["Logic and case law dictate that a conspiracy to commit negligence is a non sequitur"]; compare *Wright v. Brooke Group Ltd.* (Iowa 2002) 652 N.W.2d 159, 173 [disagreeing that a civil conspiracy to be negligent is a non sequitur: "So long as the underlying actionable conduct is of the type that one can plan ahead to do, it should not matter that the legal system allows recovery upon a mere showing of unreasonableness (negligence) rather than requiring an intent to harm"]; *Sackman v. Liggett Group, Inc.* (E.D.N.Y. 1997) 965 F.Supp. 391, 395-396 [declining to summarily adjudicate cause of action based on alleged conspiracy to market a defective product].

"responsible . . . for all damages ensuing from the wrong . . . ." (*Applied Equipment*, *supra*, 7 Cal.4th at p. 511; see *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784-785 ["As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damages on *all* of them, regardless of whether they actually commit the tort themselves;" "[t]acit consent as well as express approval will suffice to hold a person liable as a coconspirator"].) Meyer does not cite, nor have we found, authority requiring the participants to a conspiracy to possess the specific intent to harm a particular person or commit a specific injury. The authorities cited by Meyer, while they involve intentional torts, do not expressly limit conspiracy liability to instances where participants direct their tortious or unlawful acts at a particular person. As we have summarized above, the evidence need only raise an issue as to the participants' knowledge of the agreement's unlawful purpose, which here was to drive so fast in excess of the speed limit as to render the car airborne on Skyview Drive. Viewing the facts most favorably to Navarette, a jury could reasonably conclude that Meyer and Coleman expressly or tacitly agreed that Coleman would engage in an unlawful exhibition of speed, and knew that was the specific unlawful purpose of their agreement. This conduct is sufficiently intentional to support a cause of action for conspiracy.

V. *Claim for Violation of Vehicle Code Section 21701/Negligence Per Se*

Navarette contends she presented evidence raising a triable issue of material fact as to whether Meyer unreasonably interfered with the safe operation of a vehicle by her words and actions within the meaning of Vehicle Code section 21701. Analogizing the circumstances to *Turner v. Mannon* (1965) 236 Cal.App.2d 134 in which a passenger's

24

exclamation to the driver, "This is a curve . . . turn" resulted in an accident,[6] Navarette points out Meyer may claim her exhortation to Coleman to "go faster" was not a "strident exclamation," but it is for the jury to evaluate how Meyer communicated her desire for the vehicle to speed up and become airborne; that "[t]he inflections from the verbal instructions and inferences therefrom are issues for the jury to weigh."

Meyer responds that the cases on which Navarette relies make a distinction between "merely offering directions" and actual interference with a vehicle's operation. She argues there is no evidence she shouted at Coleman or startled him, but even if she had, Coleman did not lose control of his car because of that act. According to Meyer, "[Coleman] chose to go faster, and that conduct, not [her] supposed shouting, led to the accident." She maintains that the theory of willful interference proposed by Navarette is not supported by the statutory language and would lead to absurd results.

---

6      In *Turner v. Mannon*, *supra*, 236 Cal.App.2d 134, a passenger in a vehicle (Turner) sued the driver (Mannon) and the driver's mother on theories of "willful misconduct" and negligence after she was injured in a single car accident. (*Id*. at p. 136.) Turner and Mannon, both minors at the time of the accident, were driving on a curvy road when Turner "suddenly and emphatically" stated, "This is a curve, Nancy, turn," causing Mannon to overcompensate and slide out of control and hit a telephone pole. (*Id*. at pp. 137-138.) Mannon testified that "she did not observe any such sharp curve as [Turner's] shouting led her to believe existed at that point." (*Id*. at p. 138.) On appeal from a defense verdict, Turner challenged the court's instructions on contributory negligence on grounds there was no credible evidence to support an inference of negligence on her part. (*Id*. at pp. 140-141.) The appellate court rejected the contentions, pointing out that the accident may have been due in part to Turner's contributory negligence; that the record "indicates that the sharp and sudden movement to the left on the part of the defendant driver was due to the strident exclamation of plaintiff concerning the curve. It is obvious that a plaintiff may be guilty of contributory negligence by reason of an unexpected, or stressed, exclamation or statement made by her to a defendant, causing alarm and exaggerated or sudden movement, which leads to an accident." (*Id*. at p. 141.)

25

A.  *Legal Principles*

Vehicle Code section 21701 provides in part:  "No person shall wilfully interfere with the driver of a vehicle or with the mechanism thereof in such manner as to affect the driver's control of the vehicle."  In *Reclusado v. Mangum* (1964) 228 Cal.App.2d 8, the court explained that the "purpose of [Vehicle Code section 21701] was to prevent anyone from doing intentionally anything that would unreasonably interfere with the driver in the operation of the vehicle 'in such manner as to affect the driver's control' irrespective of whether such person actually intended to affect the operation or not . . . ."  (*Id*. at p. 15.)

*Reclusado* involved the grant of a defense new trial motion on grounds of errors at law in jury instructions.  (*Reclusado v. Mangum*, *supra*, 228 Cal.App.2d at p. 10.)  There, the defendant, a back-seat passenger in a vehicle driven by her 15-year-old son who had received his instruction permit days earlier, put her 18-month-old child into the front seat next to her son after which the car went off the road, struck a cement culvert, killed one person and injured the vehicle's occupants.  (*Id*. at p. 12.)  The plaintiff sued the driver's mother for negligence in part on the theory that she willfully interfered with the driver so as to affect his control of the car.  (*Id*. at pp. 10, 11.)  As relevant here, the trial court instructed the jury on the language of Vehicle Code section 21701 and told them if a party violated that statute, a presumption of negligence arose that could be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable.  (*Id*. at p. 14.)

On appeal, the respondent took the position that the statute required "as a prerequisite to liability there must be a physical interference with the driver's operation,

26

with specific intent to affect the operation itself." (*Reclusado v. Magum*, *supra*, 228 Cal.App.2d at p. 15.) The appellate court rejected that position, stating that the Legislature's intention seemed "broader in scope . . . ." It reasoned: "Many acts which the code section is designed to prevent are not accompanied by an actual wish to interfere directly with the operation of the car, such as turning off the ignition switch, pushing the driver out of the way, or blinding his view of the road by holding some object in front of his eyes. Of course, these acts would be breaches of the code section. But there are even more frequent acts constituting interference with the driver which are reprehensible, and the evidence on behalf of the plaintiff in the present action seems to present one of them. When the occupant of a back seat wilfully thrusts a baby forward into the front seat in such a way as to cause a lapse of the driver's control so that an accident will be caused and serious injuries inflicted, it is a dangerous and improper act which the code section in question forbids. The jury had a right to judge from all of the evidence in the case whether Mrs. Mangum wilfully and negligently interfered with the driver of the vehicle." (*Id*. at pp. 15-16.) On these facts, the *Reclusado* court held the trial court erred by granting a new trial on defendants' behalf. (*Id*. at p. 16.)

Here, in the context of a summary judgment, we must decide whether Meyer has demonstrated as a matter of law that her conduct falls outside what the Legislature intended to proscribe when it stated a person shall not willfully "interfere with" a driver "in such manner as to affect the driver's control of the vehicle." In determining the meaning and scope of a statute, we begin with the statute's plain language and afford its words their ordinary and commonsense meaning, so as to ascertain the Legislature's

27

intent.  (*Tract 19051 Homeowners Ass'n v. Kemp* (2015) 60 Cal.4th 1135, 1143; *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630.)  The statute does not define the term "interfere."  The common meaning of the word "interfere" is broad: the dictionary definition is "to interpose in a way that hinders or impedes: come into collision or be in opposition" or "to enter into or take part in the concerns of others." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 652.)  Applying the ordinary meaning of these words compels us to agree with *Reclusado* that direct physical interference is not strictly required to violate the statute: a person can interfere with a driver so as to affect the driver's control of the vehicle within the meaning of Vehicle Code section 21701 without necessarily physically touching the driver, physically hindering the driver's ability to see or drive, tampering with the vehicle, or otherwise directly affecting the vehicle's machinery.

We accordingly take a broad view of what actions will constitute willful interference so as to affect a driver's control of a vehicle for purposes of liability under Vehicle Code section 21701.  For purposes of Navarette's summary judgment motion, the evidence is undisputed that Meyer had special knowledge that a car speeding on Skyview Drive could become airborne due to the unique road conditions; she had been a passenger in a vehicle speeding on the road before in which the car became airborne and she thought it would be "fun" to recreate that scenario.  To that end, she encouraged Coleman to take that road and to speed on it, then told him to drive faster to increase the chance that the car's tires would leave the roadway.  Under the statute, Meyer did not have to have specific intent to affect Coleman's control, she merely had to take some intentional

28

action that in some way would affect Coleman's control. (*Reclusado v. Magum*, *supra*, 228 Cal.App.2d at pp. 15-16.) Because a driver's control is necessarily affected when the vehicle's tires leave the roadway (see *In re F.E.* (1977) 67 Cal.App.3d 222, 225; *People v. Grier*, *supra*, 226 Cal.App.2d at p. 363), we cannot say as a matter of law that Meyer's conduct falls outside the sort of interference that the Legislature sought to prevent in Vehicle Code section 21701.

We are unpersuaded by Meyer's summary judgment arguments, repeated in part in her respondent's brief, that unless limited in the manner she proposes, liability under Vehicle Code section 21701 could unreasonably extend to a person who merely talks on the phone with a driver and tells them to hurry or drive faster. The facts presented in this case on summary judgment demonstrate much more than Meyer merely offering directions to Coleman. Meyer's hypothetical scenarios omit a critical fact present in this case: that when Meyer urged Coleman to drive faster, she did so with special knowledge of the likelihood that his speeding vehicle would leave the roadway. Indeed, a reasonable trier of fact could conclude from the evidence favorable to Navarette that Meyer specifically intended that result. Under these narrow circumstances, summary judgment was not warranted on Navarette's cause of action for violation of Vehicle Code section 21701.

DISPOSITION

The judgment is reversed.  Plaintiffs are awarded costs on appeal.


O'ROURKE, J.

WE CONCUR:


McINTYRE, Acting P. J.


IRION, J.