Filed 11/19/21  Powell v. Idleman CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LUPE POWELL,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>LUCIE IDLEMAN,<br><br>    Defendant and Cross-defendant;<br><br>JONATHAN CHRISTODORO,<br><br>    Defendant, Cross-complainant and Respondent. | B302926<br><br>(Los Angeles County Super. Ct. No. BC626424) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard J. Burdge, Jr.  Reversed in part and remanded with directions.

Law Offices of Daniel P. Powell and Daniel P. Powell; Esner, Chang & Boyer, Stuart B. Esner, Andrew N. Chang, and Kevin K. Nguyen for Plaintiff, Cross-defendant and Appellant.

The Samini Firm, Bobby Samini and Nicole C. Prado for Defendant, Cross-complainant and Respondent.

_____

## INTRODUCTION

Lupe Powell's daughter, Lucie Idleman, bought a house with her friend and business partner, Jonathan Christodoro. The partners planned to remodel and resell the house within a few months. Not long into the project, Idleman, without informing Christodoro, asked Powell to provide additional funding. Idleman subsequently abandoned the project, Powell came forward and contributed her time and almost $300,000 to complete the renovation, and the house eventually sold 18 months after Idleman and Christodoro bought it.

Powell sued her daughter (who later filed for bankruptcy) and Christodoro to recover her expenditures. Christodoro filed a cross-complaint against Powell for aiding and abetting Idleman's breach of fiduciary duty, fraudulent concealment, and constructive fraud. Christodoro alleged Idleman did not obtain permits for the project, used unlicensed construction workers, and got her mother involved in the renovation, all without Christodoro's knowledge or consent. Christodoro alleged that, as a result, he lost money on the project.

A jury awarded Powell nothing on her complaint, and awarded Christodoro $107,374.21 on his cross-complaint. Powell appeals, arguing that the trial court erred in instructing the jury

on a licensing law for contractors that she claims Christodoro raised for the first time at the close of evidence, that substantial evidence did not support the jury's verdict Powell aided and abetted Idleman's allegedly tortious conduct, and that Christodoro's expert on damages disavowed the very evidence on which the jury based its award of $107,374.21 in damages. We conclude that Powell forfeited her argument the trial court erred in instructing the jury on the licensing law and that the trial court did not err in allowing Christodoro, at the end of the trial, to argue the licensing law barred Powell from recovering on her complaint. But we agree with Powell that substantial evidence did not support the jury's verdict against her for aiding and abetting. Therefore, we affirm the portion of the judgment against Powell on her complaint and reverse the portion of the judgment against her on Christodoro's cross-complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Idleman and Christodoro Agree To Buy and "Flip" Property in Rancho Palos Verdes*

Idleman and Christodoro met in 2002 and became friends. Idleman was a licensed real estate agent in California, and Christodoro was a businessman in New York. In 2014 Idleman and Christodoro began buying houses in Southern California, intending to improve the properties and sell them for a profit (also known as "flipping").[1] Christodoro generally provided funds

---

[1] "To 'flip' is '[t]o buy and then immediately resell . . . real estate in an attempt to turn a profit.'" (*U.S. v. Sloan* (7th Cir. 2007) 505 F.3d 685, 690, fn. 9.)

3

to buy and renovate the houses, Idleman oversaw the renovations and listed the properties for sale, and the two partners divided the profits.

In late 2014 Idleman and Christodoro agreed to buy a house in Rancho Palos Verdes the parties call the Newridge Property for $1.065 million. Christodoro made the down payment of $397,950 and obtained two short-term "hard money" loans for the remainder of the purchase price.[2] After the sale closed, Idleman sent Christodoro a one-paragraph email titled "investment memo," stating that the renovation would begin the first week of December 2014 and take approximately two months, that the project would have a budget of $150,000, that the house would sell for $1.6 million to $1.75 million, and that the parties would split the net proceeds equally. Christodoro provided $75,000 of the $150,000 renovation budget and, according to him, Idleman agreed to provide $80,000. Christodoro said Idleman's "role" in the project was "to do all of the work with all of the required licenses, permits, plans, general contractor required under law." Christodoro admitted, however, there was no written contract stating the terms of the partnership.

B.    *Idleman Brings Powell into the Project*

Powell, a licensed real estate agent, had experience buying and improving investment properties. Powell said that in December 2014 Idleman asked her to "invest" in the Newridge Property because Idleman's "partner [was] not sending money for

---

[2]    "[A] so-called hard money loan, as the name implies, is characterized by its short term and high rate of interest." (*514 Broadway Inv. Trust v. Rapoza* (D.R.I. 2011) 816 F.Supp.2d 128, 131, fn. 1.)

4

the remodel." Powell decided to help her daughter because she wanted to "heal" their estranged relationship, to help Idleman succeed, and to see her grandchildren more often. Powell said that, in exchange for investing in the project, Idleman promised Powell she would get the real estate listing on the house and receive a portion of the profits from the sale. Powell said her investment was supposed to be "short-lived," until Christodoro sent Idleman more money. There was no written agreement between Powell and Idleman, no budget, and no agreed share of the profits on the sale. But Powell said Idleman agreed to repay Powell's investment at the close of escrow.

In February or March 2015 Powell had a dispute with the general contractor Idleman hired for the project, and the contractor quit. Powell began going to the job site more often and helped hire a new construction crew, but Powell said Idleman was still "running the job." But then Idleman too "abandoned" the project, and at times did not return Powell's phone calls for days or weeks.

After Idleman quit, Powell went to the job site daily, hired and paid construction workers, supervised their work, and procured materials. Powell said she did these things because she had already invested a lot of money in the project and wanted to get her money back. Powell did not ask whether any of the workers at the site (including those she hired) were licensed because she was not "running the show."

The record does not indicate why the project took longer than Idleman's original estimate of two months, but Powell's active role at the jobsite did not end until May 2015. Powell listed the property for sale in August 2015. By that time, Powell claimed, she had invested over $300,000.

Christodoro did not know about or authorize Powell's investment or involvement in the Newridge Property. For her part, Powell knew Christodoro was an owner of the property, but she never attempted to contact him. Powell explained she had no reason to contact Christodoro because she communicated with Idleman, who was Christodoro's partner and one of the owners of the property.

C. *The Newridge Property Eventually Sells, but Powell Does Not Receive Any of the Proceeds*

The Newridge Property went into escrow in January 2016. An inspection revealed that Idleman had not obtained permits for the project and that there was a problem with a structural beam. Christodoro testified he spent approximately $50,000 to fix the structural beam and to obtain the necessary permits,[3] which brought his total investment to "over $700,000."

In March 2016 Powell sent the escrow agent a document titled "Demand for Payment" that purported to instruct the escrow company to pay her $180,000 from the seller's proceeds "[f]or work and materials paid in connection with the sale of [the Newridge Property]." Idleman signed the document; Christodoro did not. According to Christodoro, he first learned of Powell's involvement in the Newridge Property from the Demand for Payment, and he instructed the escrow agent not to honor it. The escrow agent said she did not pay the demand because she received conflicting instructions from the property's owners and the amount requested was not secured against the property.

---

[3] The parties disputed at trial whether Christodoro or Idleman obtained the "after-the-fact" permits.

6

Escrow eventually closed in May 2016 at a sale price of $1,599,000. After paying off Christodoro's loans, related fees (including late fees), and real estate commissions,[4] the escrow company distributed $507,399.45 to Christodoro and $95,000 to Idleman. Neither Christodoro nor Idleman reimbursed Powell for any of the money she had invested in the property, and Christodoro claimed he lost over $200,000 on the project.

D.    *Powell Sues Christodoro and Idleman, Christodoro Sues Powell and Idleman, and Christodoro Prevails*

Powell filed this action on July 8, 2016, alleging causes of action against Christodoro and Idleman for breach of contract, money lent or paid, and unjust enrichment. Christodoro filed a cross-complaint, alleging causes of action against Idleman for breach of fiduciary duty, fraud by concealment, and constructive fraud and causes of action against Powell for aiding and abetting each of those torts. Christodoro alleged Idleman breached her fiduciary duties to him by, among other things, failing to obtain "all proper permits and/or licenses to perform" the work on the Newridge Property, failing to perform the work competently, and "enter[ing] into an alleged agreement and/or partnership with her mother Powell in that Powell was to furnish the same and/or similar services (i.e. expertise as a licensed California real estate agent) with respect to the renovation and/or remodeling and eventual sale of the Newridge Property," which Idleman "kept

_____

[4]    Christodoro testified he learned Powell was a listing agent for the Newridge Property when he learned about the problem with the structural beam. The record suggests, however, neither Idleman nor Powell was listed as the seller's broker or agent in connection with the property's ultimate sale.

7

secret" from Christodoro. Christodoro alleged that Idleman fraudulently concealed Powell's involvement and investment and that such conduct also constituted constructive fraud. Christodoro also alleged Idleman represented herself as a "general building contractor" but did not have a California contractor's license until May 27, 2016 when she "associated" herself with the license held by her corporation, D'Oro Development, Inc.

In his cause of action against Powell for aiding and abetting breach of fiduciary duty, Christodoro alleged Powell knew Idleman owed Christodoro certain fiduciary duties and knowingly participated in Idleman's breaches of those duties by, among other things, keeping secret Powell's involvement and investment in the project and failing to obtain "all proper permits and/or licenses to perform" the work on the property. In his causes of action against Powell for aiding and abetting fraudulent concealment and constructive fraud, Christodoro alleged Powell "knowingly participated in the foregoing tortious misconduct in conscious disregard of Christodoro's rights and aided and abetted Idleman in her fraudulent conduct and accompanying breaches of fiduciary duties for her own personal gain."

A jury found against Powell on all of her causes of action against Christodoro, and found for Christodoro on his causes of action against Powell for aiding and abetting breach of fiduciary duty and constructive fraud. The jury awarded Christodoro $107,374.21 in damages against Powell,[5] and the trial court

---

[5] Counsel for Christodoro informed the jury Idleman was not present at the trial because "she filed [for] bankruptcy, and her claims were adjudicated in that court." The docket in the record

entered judgment. The trial court denied Powell's motions for judgment notwithstanding the verdict and for a new trial, and Powell timely appealed from the judgment.

## DISCUSSION

A. *Powell Forfeited the Argument the Trial Court Erred in Instructing on the Contractors State License Law, and the Trial Court Did Not Err in Allowing Christodoro To Argue the Law Precluded Powell from Recovery*

Powell argues the trial court erred in instructing the jury on the Contractors State License Law (Contractors Law) (Bus. & Prof. Code, § 7000 et seq.)[6] and in allowing Christodoro to present a new defense to Powell's complaint on the penultimate day of the trial. The first argument is forfeited; the second is meritless.

1. *The Contractors State License Law*

The Contractors Law "governs construction business in California in a manner intended to ""protect the public from incompetent or dishonest providers of building and construction services.""" (*Manela v. Stone* (2021) 66 Cal.App.5th 90, 102; see *Pacific Caisson & Shoring, Inc. v. Bernards Bros. Inc.* (2011) 198 Cal.App.4th 681, 687.) The Contractors Law "sets forth the

_____

indicates the trial court entered a stay on September 19, 2018 pending bankruptcy proceedings. Idleman is not a party to this appeal.

[6] Undesignated statutory references are to the Business and Professions Code.

9

general rule that 'no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action . . . for the collection of compensation for the performance of any act or contract where a license is required . . . without alleging that they were a duly licensed contractor at all times during the performance of that act or contract.'" (*Manela*, at p. 102; see § 7031, subd. (a).)[7]  Thus, "a contractor 'is ineligible to recover *any* compensation under the terms of [section 7031], if, at *any* time during performance of an agreement for contractor services, he or she was not duly licensed.'" (*Manela*, at p. 102; see *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 425; see also *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 518 ["The [Contractors Law] shields persons who utilize the services of an unlicensed contractor from lawsuits by that contractor to collect payment for unlicensed work."].)

"The California Supreme Court has given a broad, literal interpretation to the shield provision in section 7031." (*White v. Cridlebaugh, supra*, 178 Cal.App.4th at p. 518.)  "The statutory language demonstrates the Legislature's 'intent to impose a stiff all-or-nothing penalty for unlicensed work'" that "applies '[r]egardless of the equities.'" (*Id.* at pp. 518-519; see

---

7      Section 7031, subdivision (a), provides in relevant part that "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person . . . ."

10

*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra,* 36 Cal.4th at p. 426; *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 997; *Manela v. Stone, supra,* 66 Cal.App.5th at p. 102.)  Moreover, "a contractor seeking damages must allege and prove it held a valid license before it can prosecute any claim for damages." (*Jeff Tracy, Inc. v. City of Pico Rivera* (2015) 240 Cal.App.4th 510, 517.)  Because section 7031, subdivision (d), "places the burden of proof on the contractor" to prove he or she is properly licensed, a defendant's general denial puts licensing at issue, even if not asserted as an affirmative defense.  (*Id.* at pp. 517-518; see *Advantec Group, Inc. v. Edwin's Plumbing Co., Inc.* (2007) 153 Cal.App.4th 621, 624, 626-628 ["faced with an answer that makes a general denial, the contractor is required by section 7031, subdivision (d), to prove the allegation of licensure, and can do so only by producing a verified certificate"].)

The Contractors Law defines "contractor" as "any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building . . . ." (§ 7026; see *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 31; *WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 587-588.)  "'[B]oth the person who provides construction services himself and one who does so "through others" qualifies as a "contractor."'" (*Ahdout,* at p. 31; see *WSS,* at p. 593.)  Section 7031 "'applies not only to formal agreements, but governs "any *act* or contract for which a license is required." . . . [Citation.] The statute applies whether or not a party is operating under an

11

executed contract when performing tasks that require licensure.'" (*Ahdout*, at p. 32; see *WSS*, at p. 592.) The Contractors Law exempts from the requirement to use licensed contractors "owner-builders" under certain circumstances. (§ 7044; see *Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.* (1996) 49 Cal.App.4th 1397, 1415-1416 [the "owner-builders" exemption exempts "owners doing their own work or hiring licensed subcontractors, etc."].) The statute also creates a rebuttable presumption that, where an owner-builder offers a building for sale within one year of completion of construction, the construction was for purposes of sale. (§ 7044, subd. (b)(1).)

### 2. *Relevant Proceedings*

Christodoro did not list the Contractors Law as an affirmative defense in his answer to Powell's complaint. On August 30, 2018, a year before the trial, the parties submitted an initial list of proposed jury instructions, and that list did not include any instructions relating to the Contractors Law. But the parties identified and litigated the issue later in the case. Two weeks before the trial began, the parties submitted a list of disputed instructions that included CACI Nos. 4560 (Recovery of Payments to Unlicensed Contractor) and 4561 (Damages—All Payments Made to Unlicensed Contractor). Throughout the trial, counsel for Christodoro asked Powell, the individuals Powell hired or paid to work on the Newridge Property, and Powell's husband, Daniel Powell (who was also counsel for Powell), whether Powell or any of the workers she hired were licensed contractors. All of the witnesses said either that the workers were not licensed or that the witnesses did not know. In response to the question whether "there was a licensed general contractor

12

in charge of the Newridge project at any time," Daniel Powell, said, "I just knew [Idleman] was an owner-builder."

On September 9, 2019, the day before the trial ended, Christodoro asked the trial court to instruct the jury "on the legal standards under the [Contractors Law]" in connection with Christodoro's unclean hands defense. Christodoro argued Powell had unclean hands "because she did not have a valid contractor's license during all times when she was performing services in relation to the renovation of the [Newridge Property]." Christodoro further argued Powell's testimony demonstrated she "was acting as a 'contractor'" within the meaning of the Contractors Law, which therefore barred her claims against him because she did not have a contractor's license. Consistent with the list of disputed jury instructions the parties submitted on August 30, 2018, Christodoro asked the trial court to instruct the jury with CACI Nos. 4560 and 4561 and with three special jury instructions based on the Contractors Law, including the owner-builder exception.[8]

The trial court considered Christodoro's request after both sides rested on September 9, 2019. Counsel for Powell argued Christodoro's request was "a classic trial by ambush" because the Contractors Law "was never a part of [the] case." Counsel for Powell asserted that neither Christodoro's responses to her interrogatories about Christodoro's affirmative defenses and his cross-complaint nor the previous lists of proposed jury instructions mentioned the Contractors Law. Counsel for Powell also argued that Christodoro did not call an expert witness to

---

[8] The proposed special jury instructions related to the scope of projects subject to the Contractors Law, the definition of "contractor," and the owner-builder exception.

testify about the "ambiguities" of the owner-builder exception or the Contractors Law more generally and that the Contractors Law did not apply because Powell acted as a "bank," not a "contractor." Counsel for Powell argued Powell would suffer prejudice if the court gave the requested instructions because Powell did not have an opportunity to consult with experts or to present testimony from the "appropriate people to address [the] issue."

Counsel for Christodoro responded that "licensing and contracting requirements are in the cross-complaint" and that substantial evidence supported giving the instructions on the Contractors Law, in part because Daniel Powell testified the owner-builder exception applied. The trial court, observing that Powell's interrogatories did not "specifically ask about the paragraph in which the cross-complaint talks about licenses," ruled it would give CACI No. 4560 and the three special instructions, but not CACI No. 4561.

> 3. *Powell Forfeited Her Argument the Trial Court Erred in Instructing the Jury on the Contractors Law*

In a civil case, "'[a] party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him [or her] which is supported by substantial evidence.'" (*Haytasingh v. City of San Diego* (2021) 66 Cal.App.5th 429, 457; see *Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 467.) Each party must propose complete and comprehensive instructions in accordance with that party's theory of the case; in the absence of a request, the court has no duty to instruct the jury on its own motion. (*Metcalf v.*

*County of San Joaquin* (2008) 42 Cal.4th 1121, 1130-1131; *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 950-951, disapproved on another ground in *White v. Ultramar* (1999) 21 Cal.4th 563, 574, fn. 4; *Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 655.) "'Neither a trial court nor a reviewing court in a civil action is obligated to seek out theories plaintiff might have advanced, or to articulate for him that which he has left unspoken.'" (*Metcalf*, at p. 1131; see *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1008.)

When the trial court gives a jury instruction that "is correct as far as it goes but which [the appellant argues] is too general or is incomplete for the state of the evidence, a failure to request an additional or a qualifying instruction [forfeits] a party's right to later complain on appeal about the instruction which was given." (*Suman v. BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9; accord, *Scofield v. Critical Air Medicine, Inc.* (1996) 45 Cal.App.4th 990, 1011; see *Hurley v. Department of Parks & Recreation*, *supra*, 20 Cal.App.5th at p. 655 ["a party may not argue on appeal that the court failed to give a specific instruction when that party did not request such instruction"]; 7 Witkin, Cal. Procedure (2020 supp.) Trial, § 260 ["In order to complain of failure to instruct on a particular issue, the aggrieved party must request the specific proper instruction."].)

Powell does not argue that substantial evidence did not support instructing the jury on the Contractors Law or that the instructions the trial court gave misstated the law. Instead, she argues that the Contractors Law does not "prevent a partner or her agent from obtaining reimbursement from the partnership" and that this "exception" to the Contractors Law applied because Powell acted as an authorized partner or agent of Idleman or

15

because Christodoro was otherwise liable for Idleman's obligations. In essence, Powell argues the trial court should have instructed the jury that, under the circumstances of this case, the Contractors Law did not apply because there is an exception for partners or agents of partners.[9] Powell, however, did not make this argument during trial or propose an instruction on this theory. Therefore, she forfeited her argument. (See *Metcalf v. County of San Joaquin*, *supra*, 42 Cal.4th at p. 1131 [where ""the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction in order to have the error reviewed*,"" and a party's "failure to request any different instructions means he may not argue on appeal the trial

---

[9]     Although Powell argues "the law does not allow the [Contractors Law] to be used as a shield for the avoidance of a partnership obligation," the Supreme Court in *Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141 identified but did not reach that issue. (See *id.* at pp. 151-152 [declining to decide "whether an action for an accounting against a partner or joint venturer is 'an action for the collection of compensation' within section 7031]".) Several courts of appeal have held the Contractors Law does not prevent an unlicensed contractor from seeking payment from a partner or joint venture in certain circumstances. (See *Wold v. Luigi Consentino & Sons* (1952) 109 Cal.App.2d 854, 858 [lack of a contractor's license "'does not preclude a party [in a partnership or joint venture] from instituting proceedings for dissolution of the venture and an accounting'"]; *Galich v. Brkich* (1951) 103 Cal.App.2d 187, 190-191 [same]; *Norwood v. Judd* (1949) 93 Cal.App.2d 276, 286 [Contractors Law was "not passed for the benefit of a greedy partner who seeks to keep for himself all of the fruits of the partnership enterprise to the exclusion of another partner entitled to share therein"].)

16

court should have instructed differently"]; *Agarwal v. Johnson, supra*, 25 Cal.3d at pp. 948-949, 950-952 [defendants forfeited the argument the court should have given an instruction distinguishing between the defendants' liability for compensatory and punitive damages where the instruction the court gave correctly stated the law and the defendants did not request an instruction making that distinction]; *Conservatorship of Gregory* (2000) 80 Cal.App.4th 514, 520-521 [defendants' failure to request an instruction on the statutory definitions of terms used in another instruction forfeited the argument the instruction was misleading, where the instruction given accurately stated the law].)

> 4. *The Trial Court Did Not Err in Allowing Christodoro To Raise the Contractors Law*

"'Surprise' as a ground for a new trial denotes some condition or a situation in which a party to an action is unexpectedly placed to his detriment. The condition or situation must have been such that ordinary prudence on the part of the person claiming surprise could not have guarded against and prevented it. Such party must not have been negligent in the circumstances." (*Wade v. De Bernardi* (1970) 4 Cal.App.3d 967, 971; see *Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1806-1807, disapproved on another ground in *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 815, fn. 8.) Thus, for a trial court to grant a new trial based on surprise, "[t]he surprise must have detrimentally impacted the party moving for a new trial, but the movant must not have been able to prevent or guard against it by ordinary prudence." (*McCoy v. Pacific Maritime Assn.* (2013)

216 Cal.App.4th 283, 305; see *Hata*, at p. 1806.) We review a trial court's denial of motion for new trial on the ground of surprise for abuse of discretion. (See *Denton v. City and County of San Francisco* (2017) 16 Cal.App.5th 779, 794; *Wade*, at p. 971.)

Powell argues the trial court erred in allowing Christodoro "to inject the [Contractors Law] issue despite never raising it during pleadings and discovery and only arguing it on the second to last day of trial" and in denying her motion for a new trial on the ground of surprise. The record does not support Powell's arguments. Christodoro's claims against Powell were based in part on Idleman's failure to have or obtain the required licenses for the Newridge project. Specifically, Christodoro alleged he relied on Idleman to obtain all the required permits and licenses for the project. And Christodoro asked the trial court to instruct the jury with CACI Nos. 4560 and 4561 on August 16, 2019, two weeks before the first day of trial, not as Powell asserts, on September 9, 2019.

Moreover, as discussed, counsel for Christodoro asked Powell and virtually every witness Powell called to testify at trial whether they were licensed contractors, putting Powell on notice that the licensing issue was central to the case. Counsel for Powell (who, as stated, was Powell's husband) even raised at trial the issue of the owner-builder exception to the Contractors Law. Powell was hardly surprised about the role the Contractor's Law played in the case.

Finally, Powell's testimony relating her day-to-day activities at the Newridge Property constituted substantial evidence she acted as a "contractor" under the Contractors Law. (See *Vallejo Development Co. v. Beck Development Co.* (1994)

18

24 Cal.App.4th 929, 939-940 [company "act[ed] 'in the capacity of a contractor'" by "perform[ing] only administrative and oversight functions" for a construction project]; *General Ins. Co. of America v. St. Paul Fire & Marine Ins. Co.* (1974) 38 Cal.App.3d 760, 763, 765 [where a surety took over the day-to-day operations of a construction project for its principal, which "was in financial difficulties," the "*manner* in which [the surety] chose to discharge [its] function" rendered it a "contractor" under section 7026].) As a result, Powell had the burden of alleging and proving she had the appropriate contractor's license. (See *Jeff Tracy, Inc. v. City of Pico Rivera, supra*, 240 Cal.App.4th at pp. 517-518; *Advantec Group, Inc. v. Edwin's Plumbing Co., Inc., supra*, 153 Cal.App.4th at p. 627.) Powell cannot fault Christodoro for failing to raise earlier in the case something she had the burden to prove.

B.      *Substantial Evidence Did Not Support the Jury's Findings Powell Aided and Abetted Idleman's Breach of Fiduciary Duty or Constructive Fraud*

1.      *Applicable Law and Standard of Review*
"California imposes liability ""on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.""" (*Berger v. Varum* (2019) 35 Cal.App.5th 1013, 1025; see *IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 653-654 (*IIG Wireless*); *Navarrete v. Meyer* (2015) 237 Cal.App.4th 1276, 1286.) Christodoro did not

allege that Powell owed him an independent duty of care or a fiduciary duty or that she breached any such duty. Therefore, Christodoro's causes of action for aiding and abetting breach of fiduciary duty and constructive fraud were based on the first type of aiding and abetting, which meant Christodoro had to prove Powell had "actual knowledge of the specific primary wrong[s] [she] substantially assisted." (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1145 (*Casey*); see *IIG Wireless, supra*, 22 Cal.App.5th at pp. 653-654; *Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 343; *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1475 (*American Master Lease*); *Schulz v. Neovi Data Corp.* (2007) 152 Cal.App.4th 86, 93.)

""'[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'"" (*American Master Lease, supra*, 225 Cal.App.4th at pp. 1475-1476; see *IIG Wireless, supra*, 22 Cal.App.5th at p. 654; *Navarrete v. Meyer, supra*, 237 Cal.App.4th at p. 1287, fn. 3; *Casey, supra*, 127 Cal.App.4th at p. 1146.) Thus, Christodoro had to prove that Powell knew Idleman "was engaged in a breach of fiduciary duty" or constructive fraud and that Powell "provided assistance or encouragement to aid in the breach." (*Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 333; see *Casey*, at p. 1146 ['"The words "aid and abet" as thus used have a well understood meaning, and may fairly be construed to imply an intentional participation *with knowledge of the object to be attained*."'].) The failure to prevent a breach of fiduciary duty or fraud, even if the defendant knows the

breach or fraud is occurring, is not enough to prove aiding and abetting breach of fiduciary duty or fraud. (See *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 417, fn. 12; *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 879.)

"'When a party contends insufficient evidence supports a jury verdict, we apply the substantial evidence standard of review.'" (*Duncan v. Kihagi* (2021) 68 Cal.App.5th 519, 541; see *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.* (2020) 55 Cal.App.5th 381, 413.) "'We must "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor."'" (*Duncan*, at p. 541; see *Flagship Theatres*, at p. 413 [in reviewing a verdict for substantial evidence, "we must resolve all conflicts in the evidence in favor of the respondent, and 'indulge in' 'all legitimate and reasonable inferences . . . to uphold the verdict if possible'"].)

> 2. *Christodoro Failed To Show Powell Had Actual Knowledge That Idleman's Conduct Breached Idleman's Duties to Christodoro*

To review the sufficiency of the evidence supporting Christodoro's causes of action for aiding and abetting breach of fiduciary duty and constructive fraud, we must first identify the torts underlying Christodoro's causes of action. (See *Nasrawi v. Buck Consultants LLC, supra*, 231 Cal.App.4th at pp. 343-344; *Casey, supra*, 127 Cal.App.4th at p. 1149.) At trial, Christodoro claimed Idleman breached her fiduciary duties by using unlicensed contractors, failing to obtain permits for the Newridge Property, and involving her mother in the project without Christodoro's knowledge, including by borrowing money from her.

21

Christodoro claimed Idleman committed constructive fraud by failing to disclose Powell's involvement in the Newridge Property.

Powell does not argue Christodoro failed to prove Idleman breached her fiduciary duties to Christodoro or committed constructive fraud. To prove Powell aided and abetted Idleman's wrongful conduct, however, Christodoro also had to prove (1) Powell knew of Idleman's conduct; (2) Powell knew Idleman's conduct breached her fiduciary duties to Christodoro and induced him to act to his detriment;[10] (3) Powell provided substantial assistance or encouragement to Idleman in committing those breaches and engaging in the fraudulent conduct; and (4) Powell's conduct was a substantial factor in causing Christodoro's harm. (See *Nasrawi v. Buck Consultants LLC, supra*, 231 Cal.App.4th at pp. 343-344; *American Master Lease, supra*, 225 Cal.App.4th at p. 1477.)[11]

---

[10] "'Constructive fraud "arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice.""" (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1131; see *Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 762 [a breach of fiduciary duty constitutes constructive fraud when a fiduciary "fail[s] to share material information with the principal"]; see also Civ. Code, § 1573.)

[11] Some cases have suggested aiding and abetting an intentional tort also requires specific intent to facilitate the wrongful conduct. (See *Nasrawi v. Buck Consultants LLC, supra*, 231 Cal.App.4th at p. 343; *Schulz v. Neovi Data Corp., supra*, 152 Cal.App.4th at p. 95.) We need not decide whether specific intent was an element of Christodoro's causes of action because, even if it is not, substantial evidence did not support the verdict.

Christodoro elicited testimony from Powell that she did not know whether certain subcontractors she hired or paid were licensed and that she never contacted or even attempted to contact Christodoro about the Newridge Property. But Christodoro never introduced any testimony or other evidence showing Powell had any knowledge of the licensing and permitting requirements for the Newridge Property, whether Idleman (whom Christodoro did not call to testify at trial) failed to procure necessary licenses or permits, or whether Idleman was keeping Christodoro in the dark about not having the required licenses or permits or about Powell's involvement. And there was no evidence Powell had any knowledge about whether Idleman spoke to or otherwise communicated with Christodoro, or about whether Idleman told Christodoro about Powell's involvement. Nor was there any evidence Powell knew Idleman's conduct breached Idleman's fiduciary duties to Christodoro or misled him to his detriment. And there was no evidence Powell ever told or encouraged Idleman not to use licensed construction workers, not to obtain necessary permits, or not to tell Christodoro about Powell's involvement. Thus, Christodoro failed to show Powell knowingly and substantially assisted Idleman in breaching her fiduciary duties to Christodoro or fraudulently withholding information from him.

Christodoro argues substantial evidence supported the verdict because he presented evidence (1) Powell and Idleman acted as partners; (2) Powell knew Idleman and Christodoro had agreed to flip the property; (3) Powell knew Idleman stopped working on the property "after Idleman and Christodoro struck a deal about 'flipping'" it; and (4) Powell compounded Idleman's mismanagement of the project. None of this evidence showed

23

Powell had actual knowledge Idleman concealed anything from Christodoro or otherwise breached her fiduciary duties to him, nor did the evidence Christodoro cites support an inference of such knowledge. (See *Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1349 ["'[s]ubstantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom'"].) To the extent Christodoro relies on evidence of Powell's partnership with Idleman to show Powell knew of Idleman's breaches of duty and constructive fraud (as he did in opposition to Powell's motion for judgment notwithstanding the verdict), evidence of Powell and Idleman's partnership, without more, did not demonstrate Powell had the requisite knowledge for aiding and abetting liability.[12] And Christodoro presented no evidence Powell made a conscious decision to participate in tortious activity for the purpose of assisting Idleman in performing any wrongful act. (See *Berger v. Varum*, *supra*, 35 Cal.App.5th at p. 1025; see also *IIG Wireless*, *supra*, 22 Cal.App.5th at p. 654 [plaintiff corporation failed to identify

---

[12] Counsel for Christodoro stated in his closing argument at trial that Powell and Idleman were partners and that "the intention of their partnership was to improve [the Newridge Property], to do it without licensed contractors, and to put it on the market and sell it." Counsel for Christodoro told the jurors that, if they found Powell and Idleman were partners, then "that's enough. They've already completed the stated goal of their partnership," and therefore Powell was liable for aiding and abetting. Counsel for Christodoro's argument appears to have suggested that a factfinder can impute the knowledge element of a cause of action for aiding and abetting an intentional tort from the existence of a partnership, a questionable proposition. In any event, Christodoro does not make this argument on appeal.

24

any facts demonstrating that the girlfriend of the corporation's majority shareholder "reached a conscious decision" to assist the shareholder in breaching his fiduciary duty to the corporation when she started a new company with the shareholder to engage in the same business]; cf. *People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1564 [substantial evidence supported the jury's verdict of aiding and abetting unfair business practices where the defendant "permitted the known unlawful practices to continue"]; *People v. First Federal Credit Corp.* (2002) 104 Cal.App.4th 721, 734-735 [same].)

## DISPOSITION

The judgment is reversed.  The trial court is directed to enter a new judgment in favor of Christodoro on Powell's complaint and in favor of Powell on Christodoro's cross-complaint.  The parties are to bear their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


IBARRA, J.[*]

---

[*]    Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.